## CITIZENS STREET RAILROAD COMPANY v. STOCKDELL.

[No. 19,269. Filed November 26, 1901. Rehearing denied June 6, 1902.]

APPEAL AND ERROR.—*Trial.*—*Misconduct of Witness.*—No question is presented on appeal as to the misconduct of plaintiff while on the witness stand, where no objection was made to such conduct at the time. *p. 27.*

EVIDENCE.—*Street Railroads.*—In an action against the Citizens Street Railroad Company for damages for personal injuries alleged to have been sustained by plaintiff while a passenger on defendant's car on Senate avenue in the city of Indianapolis, there was no evidence that defendant owned or operated a street rail-

road on Senate avenue, or that plaintiff was a passenger upon one of its cars. Defendant introduced in evidence a map showing the tracks of a street railroad on Senate avenue marked "Citizens St. R. R." and a witness for defendant testified that he was employed by the Street Railroad Company of Indianapolis as a motorman, and at the time of the accident was running a car on Senate avenue. *Held*, that the evidence was insufficient to support a verdict for plaintiff. Hadley, J., dissents. *pp. 27-33.*

APPEAL AND ERROR.—*Instructions.*—*Rules of Court.*—The action of the court in giving or refusing to give certain instructions will not be reviewed on appeal, where neither the pages and lines of the record where the instructions may be found, nor the substance of any of the instructions, are given as required by the rules of the Supreme Court. *p. 33.*

SAME.—*Failure to Discuss Error.*—*Waiver.*—Exceptions to the decisions of the court upon the motion of appellant for an order of court requiring the jury to make further answers to certain interrogatories are waived by failure of appellant's counsel to discuss them. *pp. 33, 34.*

From Hancock Circuit Court; *C. G. Offutt*, Judge.

Action by Ellen B. Stockdell against the Citizens Street Railroad Company for personal injuries. From a judgment for plaintiff, defendant appeals. *Reversed.*

*F. Winter*, *W. H. Latta*, *E. Marsh* and *W. W. Cook*, for appellant.

*W. J. Beckett*, *F. Durham* and *A. C. Harris*, for appellee.

DOWLING, J.—This is an action for damages for a personal injury alleged to have been occasioned by the negligence of the appellant. Answer in denial. Trial by jury, and a verdict in favor of appellee. Motion for a new trial overruled. Judgment for appellee.

The complaint alleged that the appellant, the Citizens Street Railroad Company, was, on June 19, 1897, a corporation owning and operating a street railroad, the cars of which were propelled by electricity, in the city of Indianapolis; that one of the lines of said railroad was situated upon north Senate avenue, a public highway of said city; that on said day the appellee took passage on one of the open cars of said railroad company to go to her home in said

Citizens St. R. Co. v. Stockdell.

city, and that she paid her fare as such passenger; that she wished to leave the said car at the intersection of Senate and Indiana avenues, and that, as said car approached the said intersection, she gave the proper signal to the conductor to stop the car, which he did; that while she was in the act of alighting, after the car stopped and when she was exercising due care and diligence, the appellant negligently started the said car, thereby hurling her to the street and inflicting severe and permanent injuries upon her, without fault upon her part, etc.

The only error properly assigned and not waived by the appellant is the refusal of the court to grant a new trial. The reasons for the motion discussed by counsel for appellant are: (1) That the appellee, during the progress of the trial, was guilty of misconduct; (2) that the damages are excessive; (3) that the verdict is not sustained by sufficient evidence; (4) that the appellant has discovered new evidence material for it, which it could not with reasonable diligence have discovered and produced at the trial; and (5) that the court erred in giving and in refusing to give certain instructions.

1. It is charged in the motion for a new trial that the plaintiff was guilty of misconduct while on the witness-stand, by making a feigned and theatrical display of distress and emotion, and an affidavit to this effect is filed with said motion. No objection having been made by the appellant to the conduct of the appellee at the time referred to, the question of its propriety was not presented to the trial court, and is not before us on this appeal.

2. It will not be necessary for us to determine the question whether or not the damages were excessive as the judgment must be reversed upon other grounds, and this question must be decided upon another trial, by another jury, and perhaps upon different evidence.

3. Was the evidence sufficient to sustain the verdict? The appellant insists that it was not, for the reason that

there was no proof that the Citizens Street Railroad Company owned or operated any line of railroad or cars on Senate avenue, or elsewhere, in the city of Indianapolis, at the time of the accident, or that the appellee was at any time received by it as a passenger upon any car owned, controlled, or operated by said appellant. The averments in the complaint that the appellant, the Citizens Street Railroad Company, owned and operated the railroad, and that the appellee was received by it as a passenger whom it undertook to carry safely, were of the most material character, and the facts so alleged constituted the very foundation of the appellee's claim for damages. Each of these allegations was expressly denied and was put in issue by the answer of the appellant. Neither the appellee herself, nor any witness called by her, testified that the accident to the appellee occurred when she was a passenger upon the railroad of the appellant, or that the car in which the appellee was being carried was owned or operated by the Citizens Street Railroad Company.

It is contended, however, on behalf of the appellee, that a map or plat introduced by the appellant showed that the Citizens Street Railroad Company had a double line of tracks on Senate avenue at the time the appellee was injured. It is also contended that the map showed that the car on which the appellee was a passenger was on the east track of the North Indianapolis line going north, and that it stopped at the crossing of Vermont street, being the point where the appellee was injured. This last proposition is, however, wholly unsupported by the map. It is not claimed by the appellee that there was any direct proof that the Citizens Street Railroad Company owned or operated the street railroad on Senate avenue, nor that the appellee was a passenger upon one of its cars. But it is said in argument that "it is nowhere disputed in the whole record that the appellant was in charge of the car upon which the appellee was a passenger; that the record shows that the car

was upon the track of the appellant, and that the motorman was in charge of the car, and that he was in the employ of the railroad company." "From these facts alone," it is said, "the jury were warranted in finding, as an inference of fact, that the car was in charge of the appellant's servant on appellant's track." "The appellant being the defendant in the case did not deny that the car upon its track was its car, although they put the motorman on the stand as their witness to prove that he was in charge of this car. Any reasonable man would draw from these facts the inference that the car was operated by the appellant." The cases of *Evansville, etc., R. Co.* v. *Snapp,* 61 Ind. 303, and *Evansville, etc., R. Co.* v. *Smith,* 65 Ind. 92, are referred to in support of the proposition that, in the absence of direct or positive evidence that the appellant was the owner of, or operated, the railroad on which the accident occurred, the jury were authorized to infer such ownership, and that the appellant operated the railroad, from the fact that there was a street railroad on Senate avenue, and that there was no evidence that any other person than the appellant owned and operated it.

A map was given in evidence by the appellant, and one Thomas B. McMath, a civil engineer in the employment of the Indianapolis Street Railroad Company, testified as follows concerning it: "Q. State whether or not, last night, at my request you made measurements and a plat of the location known as the corner of Senate avenue and Vermont street? A. I did. Q. And this map, which I show you, did you make that? A. Yes, sir. * * * Q. Now, what is represented by the two sets of parallel lines which run north and south on Senate avenue on either side of what appears to be the center of the street? A. Those lines show the location of the railroad tracks as they existed about six or eight weeks ago. Q. They are the street railway tracks? A. Yes, sir. Q. The tracks are now torn up? A. Yes, sir." The map referred to purports

to contain an outline of a portion of Senate avenue lying south of the corner of Senate avenue, Indiana avenue and Vermont street, together with short sections of those streets, and was prepared nearly two years after the accident to the appellee by the civil engineer of another street railway company. The lines of a few lots on either side of Senate avenue are laid down, and their dimensions are marked in figures on the map. Near the middle of Senate avenue are two sets of parallel lines running north and south along that street, and in the middle of the two lines on the east side are the words and letters "Citizens St. R. R."

The appellee testified that on the 19th of June, 1897, she took a car at English avenue and Harrison street, and remained on the same until she arrived at Illinois and Washington streets, where she changed and took a North Indianapolis open car. At the proper time she raised her hand for the car to stop on the corner of Senate avenue and Vermont street. The car stopped at the usual place on the corner of Senate avenue and Vermont street, and she got up, and was about to get off, when the car was suddenly started, and she fell. A witness testified that at the time of the trial he was employed by the street railroad company of Indianapolis, and that in 1897 he had been a motorman of the street railway company, but he wholly failed to state the name of the company.

Are these facts sufficient to prove that the appellant owned and operated the street railway on Senate avenue at the time of the accident, and that the appellee was then and there a passenger upon one of the appellant's cars? Or, are such facts sufficient to authorize the jury to infer that the street railroad on Senate avenue was owned and operated by the appellant, and that the appellee was a passenger upon one of appellant's cars? The name of the Citizens Street Railroad Company was not once mentioned by any witness. If the map had not been introduced, its name would not have occurred in the evidence. It does not ap-

pear whether there is but one street railroad company in the city of Indianapolis, or more than one. Neither was there any proof from which the jury could determine what company or companies ran cars over the line of railroad on Senate avenue.

A material fact, not admitted, can be established in courts of justice in no other way than by evidence. Such evidence may be direct and positive, or it may be circumstantial. But whatever its character, it must be sufficient to establish the fact it is intended to prove. When a defendant, by a proper pleading, denies every material allegation of the complaint, no presumption that he does not controvert a material fact can be indulged. Having denied the matters stated in the complaint, he is not required to admonish the plaintiff at any stage of the trial that he must introduce proof of any fact necessary to make out his case. That the fact is well known, and readily proved, does not excuse the · party on whom the burden rests from making proof of such fact.

*Evansville, etc., R. Co.* v. *Snapp,* 61 Ind. 303, was an action against a railroad company for killing stock. Among other testimony was the following: William Moring, a witness for the appellant testified: "I was a section-boss on the Evansville and Crawfordsville railroad at the time the horses were killed. They were killed this side of Griswold station. I went there to see about the horses being killed." And John Racy, a witness for the appellant, testified: "I was working on a section of the E. & C. railroad at the time the horses in controversy were killed; * * * they jumped the fence and got in on the track that way; * * * we had run the gray out many times; he had been a great bother to us; the fence was used for a partition fence for both the railroad and the pasture." In deciding the case the court say, by Howk, J.: "In the case at bar, there was no direct or positive evidence adduced upon the trial that the appellant was the owner of, or operated, the railroad

upon which the appellee's mare was run over and killed. The evidence showed that the mare was run over and killed on the Evansville and Crawfordsville Railroad. The appellant, the Evansville and Crawfordsville Railroad Company, was sued for the killing of said mare on its railroad, and appeared to, and was there before the jury defending, the action. There was not a particle of evidence adduced upon the trial tending to show that the railroad in question was owned or operated by any other person or corporation than the appellant; but it seems to have been assumed and taken for granted, as a fact about which no evidence was needed, that the railroad was owned and operated by the appellant at the time the appellee's mare was run over and killed thereon. Under such circumstances, and the evidence on the trial, it seems to us that the jury trying the cause might have fairly and reasonably inferred and found that the appellant owned and operated the railroad in question at the time the appellee's mare was killed thereon; and especially so, in the absence of any evidence whatever from which it could possibly be inferred that such railroad was owned or operated by any other person or corporation than the appellant."

It will be seen from the foregoing extract from the opinion that there was much evidence in the case of the *Evansville, etc., R. Co.* v. *Snapp, supra,* from which the jury could infer that the railroad was owned and operated by that corporation. The witnesses described themselves as employes of that company. They spoke of the track of that company. They went as servants of the company "to see about the horses being killed." They declared that the gray "had been a great bother to us." Here was evidence which justified the inferences which were made from it. But, unless it appeared from some statement in the record that "it was assumed and taken for granted as a fact about which no evidence was needed that the railroad was owned and oper-

Citizens St. R. Co. *v.* Stockdell.

ated by the appellee," the proper proof of those facts was indispensable to the success of the plaintiff.

In the case of *Evansville, etc., R. Co.* v. *Smith,* 65 Ind. 92, the court say: "There was evidence introduced on the trial to the effect that the appellant owned and operated the railroad. There was no direct and positive evidence introduced to show that the appellant owned the locomotive and cars with which it operated its line of railroad; but it seems to us that the court trying the cause might have fairly and reasonably inferred and found from the evidence adduced, in the absence of any evidence to the contrary, that the appellant operated its railroad with its own locomotive and cars."

In the case before us, no witness testified to the existence, even, of such a corporation as the Citizens Street Railroad Company. There was no evidence that it owned a railroad, or that it operated one. The map, with its lines and letters, did not supply the requisite proof that the appellant owned and operated a railroad on Senate avenue, and that the appellee was received and carried by it as a passenger. We think it entirely clear that there was a failure of proof of the allegations that, at the time of the accident, the appellant owned and operated the railroad on which the appellee was being carried as a passenger.

4. The discovery of new evidence is another reason for which a new trial was demanded, but, as this question can not arise upon another trial, it need not be considered by us.

5. The appellant complains of the action of the court in giving certain instructions, and in refusing to give others, but neither the pages and lines of the record where the instructions may be found, nor the substance of any of them, are given as required by rule twenty-six (rules 1889) of this court, and we will not review them.

The exceptions to the decisions of the court upon the motion of appellant for an order requiring the jury to make

further answer to interrogatories numbered thirteen, fifteen, and sixteen are waived by the failure of counsel to discuss them.

For the error of the court in overruling the motion for a new trial, the judgment is reversed, with instructions to sustain said motion, and for further proceedings in accordance with this opinion.

### DISSENTING OPINION.

HADLEY, J.—I find myself unable to agree with the majority that there was not sufficient evidence to warrant the jury in finding that the defendant was the wrongdoer. I concede that the record discloses no direct or positive evidence that the defendant was operating the car upon which the plaintiff was injured, or that it owned the car, or even owned a railroad in the city of Indianapolis. But it is a familiar principle that inferences which naturally arise from facts proved may be indulged as evidence, and, where they arise to that degree of cogency and force which becomes convincing, they may be accepted as proof.

This is the case made by the record: The plaintiff charges in her complaint that the defendant owns and operates a street railroad in the city of Indianapolis, which, among other streets, runs through Senate avenue; that she took passage on one of the defendant's cars to go to her home in Senate avenue, and paid her fare to the conductor of the car; that while such passenger, and when engaged in alighting from the car at her home in Senate avenue, she was injured by the negligence of the defendant's servants in charge of said car. The defendant was properly brought into court to answer this charge. It employed counsel, filed its answer, cross-examined the plaintiff's witnesses, introduced and examined nine of its own witnesses exhaustively concerning all the happenings connected with the accident, among its witnesses being the motorman who was running

the car, and a civil engineer, who, upon the request of the defendant's attorney, made an accurate map drawn to scale of the place of the accident and its environments. The map so made was introduced in evidence by the defendant, and while testifying concerning the same the engineer explained particular things indicated by it. Among other things he explained two exterior parallel lines running north and south as indicating Senate avenue. Between these exterior lines and near the middle of the street are four parallel lines which he explained as representing the street car tracks. Between the two east lines, explained as street car tracks, and near the spot where the plaintiff received her injuries, appear the word and letters printed in pencil "Citizens St. R. R." This word and letters were not explained by the engineer, or any other witness. There were other words and figures in pencil and in ink on the map that were not explained or identified by the engineer, but obviously denoting distances, and names of streets, places, and properties. The map showed the situations at that part of Senate avenue as they previously existed, the street railroad tracks, five or six weeks before the trial, having been taken up at that place and removed. The defendant prepared, and at the close of the evidence requested the court to give to the jury, fourteen different instructions, each and every one of which related exclusively to the respective duties of the parties growing out of the relation of passenger and carrier.

It is shown that, from one end of the trial to the other, while engaged in presenting its defense to the court and jury, the defendant did not, by act, special pleading, evidence, or request, make any denial, or show of denial, of being the responsible party, or suggest, or attempt to prove that the injuring car was being operated by another; that four days were consumed in contesting the merits of the case, when the appellant could have ended the trial in an hour by showing that it was not answerable for the negli-

gence complained of, and by every step taken, by every question asked of a witness, by every item of evidence offered, by every request for instructions, it acted, in the presence of the court and jury, as if its responsibility for the management of the car was confessed. Were the court and jury to shut their eyes to all this? Nor is this all. The appellant produced, as a witness, the motorman who was running the car by which the plaintiff was injured, and of whom appellant asked the following question: "How long have you been in the employ of *the company* as motorman?" and who answered, since 1894, and who testified that at the time of the plaintiff's accident he was running the car northward on the east track in Senate avenue, and the plaintiff (a lady) fell off the car at the place in Senate avenue described by the witness. The place described and its situations were afterwards exhibited to the jury by the defendant's map, and the east street car track marked "Citizens St. R. R." This map went to the jury bearing the guaranty of the defendant that it conveyed no evidence but the truth. It was prepared by the defendant's procurement, and exhibited to the jury for their enlightenment. Its introduction was at least a license to the jury to indulge the natural inference arising from every line, and figure, and word, and letter upon it. Every mark intentionally made upon the map had behind it a purpose. That purpose was rightly to guide the jury. The inference from the presence of the words is that they were placed there by the map maker to indicate the ownership of the railroad. If the purpose were otherwise, it should have been explained by the party introducing the map. What then shall be done with the words "Citizens St. R. R." printed upon the identical track, in the identical street, near the identical spot of the plaintiff's accident? Can it be said that the jury shall disregard them? If these words are to be eliminated from the map, then why shall not the map itself be eliminated from the evidence? By placing myself in the point of view occupied

by the court and jury during the progress of the trial, and looking at the conduct of the defendant, and the character of the evidence, I am firmly impressed that the jury had before them sufficient evidence to justify the finding that the averments of the complaint were sustained.

I am unable to distinguish this case in principle from *Evansville, etc., R. Co. v. Snapp,* 61 Ind. 303; *Evansville, etc., R. Co. v. Smith,* 65 Ind. 92; *Wabash R. Co. v. Forshee,* 77 Ind. 158; and *Cincinnati, etc., R. Co. v. McDougall,* 108 Ind. 179. In the Snapp case it is said: "In the case at bar, there was no direct or positive evidence adduced upon the trial, that the appellant was the owner of, or operated, the railroad upon which the appellee's mare was run over and killed. The evidence showed that the mare was run over and killed on the Evansville and Crawfordsville Railroad. The appellant, the Evansville and Crawfordsville Railroad Company, was sued for the killing of said mare on its railroad, and appeared to, and was there before the jury defending, the action. There was not a particle of evidence adduced upon the trial tending to show that the railroad in question was owned or operated by any other person or corporation than the appellant; but it seems to have been assumed and taken for granted, as a fact about which no evidence was needed, that the railroad was owned and operated by the appellant at the time the appellee's mare was run over and killed thereon. Under such circumstances and the evidence on the trial, it seems to us that the jury trying the cause might have fairly and reasonably inferred and found that the appellant owned and operated the railroad in question at the time the appellee's mare was killed thereon; and especially so, in the absence of any evidence whatever from which it could possibly be inferred that such railroad was owned or operated by any other person or corporation than the appellant."

In the Forshee case, horse tracks were seen on the railroad, and the mare was found injured twenty-two feet from

the south rail, and looked as if she had been hit with some-thing. In respect to the evidence the court said: "The testimony hereinbefore set forth tends to show that the mare was killed upon the railway, and was struck by a locomo-tive, car or carriage, in operation thereupon, and this court will not question the sufficiency of such evidence, if the jury has been satisfied by it." And in the McDougall case is the following language: "The evidence was to the effect that the horse was injured upon the track of a railway which was known as the Cincinnati, Hamilton and Indianapolis rail-road, a branch of the Cincinnati, Hamilton and Dayton railroad. *Prima facie,* this indicates a corporation of that name. It was sufficient to raise such an inference. The ani-mal having been injured, as the proof showed, by a train run upon the track of that railroad, the appellant was pre-sumptively liable for the injury."