OPPENHEIMER, OPPENHEIMER BROS., INC. *v.* CRAFT.

[No. 19,430. Filed June 19, 1961. Rehearing denied September 6, 1961. Transfer denied November 14, 1961.]

454

*Wilbur A. Royse,* of Indianapolis, *Robert H. Moore,* and *Barbara Rondinelli,* both of Gary, for appellants.

*Philip M. Cagen* and *James J. McGarvey,* both of Valparaiso, for appellee.

MYERS, J.—This is an action brought by appellee against appellants to recover damages for personal injuries alleged to have been sustained by appellee as the result of an automobile accident in the City of Valparaiso, Indiana, on September 10, 1958.

Appellee's complaint alleged that she was a guest-passenger in an automobile driven by her son, Charles R. Craft, and suffered injuries therein as the result of the operation of an automobile driven by appellant,

Gustav Oppenheimer, for and in the course of the business of appellant, Oppenheimer Bros., Inc. Appellants filed an answer, amounting to a general denial, pursuant to Supreme Court Rule 1-3. The issues thus joined, the trial was held by a jury, which returned a verdict in favor of appellee in the sum of $15,000. A motion for new trial was filed, which was overruled. Judgment was entered for appellee in accordance with the general verdict. This appeal followed.

The facts most favorable to appellee reveal that Lincolnway is one of the main streets in Valparaiso, running east and west through the downtown section. One of the streets which intersects Lincolnway is known as Franklin Avenue, running in a north and south direction. At the time mentioned herein there was a building located on the northeast corner of this intersection known as the Farmers State Bank. Its front entrance was on Lincolnway. Around the corner on Franklin Avenue were drive-in windows, where business could be transacted from automobiles. There was a no-parking area directly in front of the bank on Lincolnway, designated by yellow paint on the curb of the sidewalk. Stop-and-go lights were located at the intersection to regulate motor vehicle traffic. There were also "walk-wait" lights for pedestrians. At the time herein mentioned Lincolnway was a wide, two-way street, divided into six lanes, with a white line down the center, separating three west-bound lanes from three east-bound lanes. The lane next to the sidewalk was a little narrower than the other two lanes and was called a parking lane.

Appellee was a widow, 69 years of age, who lived with her son, Charles, in a house trailer at a trailer park in Valparaiso. He was employed at a steel mill and was the owner of a 1957 two-door automobile.

Around noon, on September 10, 1958, he and his mother drove into town from the trailer park, taking with them a girl who lived nearby. He was intending to go to the drive-in section of the Farmers State Bank. He came from the east, driving westward on Lincolnway until he arrived at the intersection with Franklin Avenue. There he stopped, due to a red traffic light. At this time the girl passenger got out of the car, leaving Charles and appellee in the front seat as the only occupants.

There was a conflict in the testimony as to whether Charles was stopped in the parking lane or the center traffic lane of the three west-bound lanes. A witness, however, testified that Charles' car was in the center of the three lanes.

While Charles was waiting at the intersection, appellant, Gustav Oppenheimer, also traveling westward on Lincolnway, drove his car up to the left of and beside Charles' car, and stopped for the traffic light at the intersection. When the light turned green and pedestrians had cleared from the street, Charles started to turn right. At the same time said appellant, without any warning, likewise turned right directly in front of Charles. In order to avoid a collision, Charles jammed on his brakes, stopping his car before it struck appellant's. The sudden halt threw appellee violently from the front seat upon the windshield and dashboard of Charles' car, causing injuries to her head and body. She was taken to a hospital where she was confined for fifteen days. Upon her release she complained of headaches and dizziness, was unsteady on her feet, and had muscle spasms in her back. She went back to the hospital in November, 1958. Shortly before the trial of this case, in June, 1959, she had a dizzy spell and fell and broke her arm, necessitating another period of hospitalization.

Prior to the accident she had cooked and done the house-work in the trailer and had been in good health. After-ward, she "wasn't any good at all" and had to have some one stay with her at all times. Her condition was diagnosed as a cerebral contusion, or bruise of the brain, and a sprain of the lumbar or lower portion of the back, with the possibility that a preexisting heart condition might have been aggravated by the physical stress or pain suffered. A physician's opinion was that the effects of the cerebral contusion, being dizziness, head pains and discomfort, would last the rest of her life.

The single assignment of error presented to us is the overruling of appellants' motion for a new trial. Such motion occupies 34 pages of the transcript and contains 20 specifications of error. We shall only take the specifications argued by appellants in their brief.

The first specification of error is that the court erred in permitting the appellee to amend her complaint after both parties had rested their case, and before argument, by adding two rhetorical paragraphs, by interlineation, being designated as paragraphs 12 (a) and 12 (b), which read as follows:

"12 (a). That by and as a result of the severe injuries suffered by plaintiff as set forth herein, plaintiff's heart became impaired and plaintiff suffered a heart attack and was confined thereby to Porter Memorial Hospital, and said injuries to her heart are permanent.

"12 (b). That by and as a result of the severe injuries suffered by plaintiff as set forth herein and in particular the injuries to her brain, plaintiff suffers from dizziness, pain in the eyes, difficulty seeing out of both eyes and double vision and that said spells of dizziness are episodic. That said episodic dizzy spells come upon plaintiff suddenly and without warning and during the course of one of said spells plaintiff fell and suffered a comminuted fracture of her right forearm; that said

fracture has been treated by closed reduction but that plaintiff will suffer impairment to said arm for the balance of her life in an amount of 25%."

The motion for leave to amend was based upon §2-1068, Burns' Ind. Stat., 1946 Replacement, which provides, in part, as follows:

"After trial and before final judgment, the court may, in its discretion and upon such terms as may be deemed proper for the furtherance of justice, order that any pleading be amended by correcting any mistake in name, description, legal effect, or in any other respect; or by inserting, striking out, or modifying any material allegation, in order that the pleadings may conform to the facts proved, where the amendment will not deprive a party of any substantial right."

Appellants argue that there was not a scintilla of evidence to justify amendment 12 (a) ; that the allegations of dizziness, pain in the eyes, difficulty in seeing out of both eyes, double vision, and the fracture of the arm, set forth in amendment 12 (b), were about conditions which were known to appellee six months before trial; that by permitting these amendments after trial, appellants were denied the right to cross-examine the witnesses and to bring in other witnesses to rebut the assertions; that this consituted an abuse of discreion on the part of the trial judge.

As to paragraph 12 (a), there was some evidence to the effect that appellee had a heart condition. Her physician, Dr. Martin J. O'Neill, testified that she had an arteriosclerotic heart disturbance, or hardening of the blood vessels, and anginal pains in her chest due to the hardening of the coronary blood vessels. He was asked the following question on direct examination:

"Q. Now, Doctor, did the condition you found of her heart, could that have been triggered or aggra-

vated as result of the injuries Mrs. Craft was hospitalized for in September?

"A. Any physical stress or pain might produce anginal pains with the pre-existing condition she has."

There was also testimony by Dr. Richard Nilges, a neurosurgeon, which is as follows:

"Q. Doctor, you stated, on the brain, that your diagnosis is that she has a contusion or bruising of the brain. Is that correct?

"A. Yes, sir.

"Q. And do you have an opinion as to how long. that condition will persist?

"A. The effects which she presently has as a result of this contusion—in other words, the episodes of dizziness or attacks of dizziness, feeling of blacking out, and the head pain and discomfort —probably will last the rest of her life."

Dr. O'Neill further testified that on June 4, 1959, appellee had a dizzy spell, blacked out, fell and broke her right arm. He stated that she would have a 25 per cent permanent loss of use of her right arm.

It is a well-established rule that the trial court may use its discretion in amending, or refusing permission to amend, pleadings after trial and before final judgment. Unless there is a clear abuse of this discretion, and the complaining party has been harmed, and his substantial rights taken from him, the trial court's action will not be disturbed. *Haley* v. *Wilson* (1932), 94 Ind. App. 402, 181 N. E. 46.

The complaint herein was filed September 22, 1958. Rhetorical paragraph 12 thereof alleged that appellee was confined to the hospital at that time because of her injuries; that treatment of her was in progress which would require medical, surgical, and hospital services for a long and indefinite period of time, the

details of which were not known then. The trial of this cause commenced on June 22, 1959, or nine months later. The evidence introduced was such that appellee saw fit to amend rhetorical paragraph 12 so as to conform to such evidence. That evidence consisted of details and specific results of her injuries which had become apparent after the filing of the complaint.

The fact that appellee may have known about certain of her conditions six months before trial does not place upon her the burden of amending her complaint at the time she acquired this knowledge. It is conceivable that new conditions would arise continuously up to and during the trial which would necessitate amendment of the complaint afterward. Our Supreme Court has stated:

> "It is the policy of the law to permit all such amendments, and the filing of all such supplemental pleadings, cross-complaints or petitions as will bring the subject-matter of an action fully before the court as it exists down to the time when no further action in the matter by the court is required." *Higgins* v. *Swygman* (1923), 194 Ind. 1, 5, 6, 141 N. E. 788, 789.

The matters alleged in paragraphs 12 (a) and 12 (b) were within the scope of the issues as formed and tried. Appellants had the right to cross-examine and present rebuttal testimony as these matters came up during the trial. We cannot see how they have been harmed by these amendments.

Furthermore, the record reveals that when the motion to amend was presented to the court, the only objection raised by appellants was as follows: ". . . to which the defendants object." After the amendment was granted, appellants made no application for a continuance, offered no additional evidence, and made no showing that they were prejudiced or harmed in any way thereby. Under such a state of

the record, this court will presume that the amendments were authorized, and the ruling of the court furnishes no ground for reversal. *C. H. Maloney & Co.* v. *Whitney* (1919), 71 Ind. App. 157, 124 N. E. 496; *Dietrich* v. *Minas* (1916), 61 Ind. App. 333, 340, 109 N. E. 930; *W. Va. Coal & C. Corp.* v. *Kokomo S. Pot. Corp.* (1939), 106 Ind. App. 637, 21 N. E. 2d 442.

Specifications 2, 3, 4, 5 and 6 of the motion for new trial present the question of the sufficiency of the evidence to sustain the verdict, and that the verdict is contrary to law. Appellants claim that there is irreconcilable contradiction and conflict as between the testimony of the son, Charles, and appellee at the trial, and their testimony given in appellee's conditional examination and the son's deposition.

Appellants assert that in his deposition, Charles was questioned as to which lane he was in when he stopped in front of the bank; that he answered he was in the right-hand lane, or the "northly" lane; that he stated he did not see appellant's car until appellant "cut him off"; that he had traveled five or six feet before he was compelled to stop. In his testimony at the trial, Charles stated that he was in the lane next to the parking lane; that he saw appellant's car when he was stopped waiting for the light to change; that he had traveled a distance of twelve or fifteen feet before applying his brakes.

Appellants claim that in her conditional examination, appellee stated that on the day of the accident she had gone into town with her son to get some groceries; that they stopped at the bank and let a lady passenger out; that her son started up and a car drove in front of them, whereupon her son put on his brakes so quickly that she was thrown forward. At the trial, appellee testified that she could remember only getting into the

car, going to town, and stopping for a red light, and that was all she could recollect.

Appellants charge that she further stated in her conditional examination that she had never had any trouble with her bowels prior to the accident. Appellants draw attention to the testimony of her regular physician to the effect that she had undergone treatment for anemia, hypothyroidism, and a worm infection of the bowel before the accident, and that she had also had a gall bladder operation prior to the accident.

Appellants cite us cases to the effect that although the evidence is sufficient to sustain the verdict, if it is of such a nature as to render it extremely doubtful whether the verdict was right, errors which might otherwise be regarded as inconsequential will require a reversal. *Pittsburgh, etc. R. Co.* v. *Haislup* (1907), 39 Ind. App. 394, 79 N. E. 1035; *The City of Lafayette* v. *Ashby* (1893), 8 Ind. App. 214, 230, 34 N. E. 238.

First of all, we do not find that appellants have specified any error in the admission of these statements, or that any objections were made to them when they were placed in evidence. Secondly, they reflect only a conflict in the evidence which was up to the jury to determine. Furthermore, such conflict does not appear to be material to the issues involved. There was sufficient evidence presented by competent witnesses for the jury to find that the Oppenheimer car and Charles' car were side by side on Lincolnway at the intersection of Franklin Avenue, with the Oppenheimer car on Charles' left; that when the traffic light changed, appellant Oppenheimer negligently made a right turn directly in front of Charles' car; that Charles stopped suddenly, which caused appellee to be thrown violently against the interior of the car. The resulting injuries were also a matter for the jury to determine from all the evidence,

including the testimony given by appellee and her physicians. We do not find it extremely doubtful from the evidence presented that the verdict was correct.

In specification 10, appellants claim error in the giving of court's Instruction No. 27. This instruction defined proximate cause and included the following paragraph:

> "If some negligent act or omission was a substantial factor in producing some injury of which complaint is made, and the particular injury suffered is of the class of injuries which was reasonably foreseeable to result from such negligence, then the negligent act or omission is a proximate cause of injury."

Appellants' objection to this instruction was as follows:

> "This instruction does not provide for negligent acts which must be stated in the complaint. In other words, the defendant might be guilty of a negligent act but if it is not stated in the complaint, then defendant is not liable; this instruction ignores the fact that a negligent act, in order to place liability on the defendants, must be stated in the complaint."

Apparently, appellants are contending that the instruction sanctions recovery for any act of negligence, whether or not alleged in the complaint. However, the instruction is limited by its own wording, which is:

> "If some negligent act or omission was a substantial factor in producing some injury *of which complaint is made* . . ." (Our emphasis.)

Furthermore, the court gave other instructions, such as preliminary Instruction No. 1, wherein the court read to the jury the substance of appellee's complaint, and preliminary Instruction No. 3, wherein the court in-

structed the jury that the plaintiff had the burden of proving by a fair preponderance of the evidence that the defendants committed one or more of the acts of negligence charged in the complaint.

In court's Instruction No. 26 the jury was told that in order to recover damages the plaintiff had to establish that (1) defendant Oppenheimer was in such a position with reference to plaintiff that a duty was imposed upon him to use reasonable care to avoid injury to the plaintiff; (2) that defendant Oppenheimer "committed one or more of the acts or omissions charged in the complaint as negligence"; (3) that by committing such acts or omissions, defendant Oppenheimer failed to exercise reasonable care under all the circumstances to avoid injury to the plaintiff; and (4) that such acts or omissions proximately caused plaintiff the injuries, or some of them, alleged in the complaint.

It is established law that instructions are to be considered as a whole and with reference to each other. If, when read as one charge, they fairly state the law, the case will not be reversed, even though one particular instruction does not state the law. *Thanos* v. *Fox* (1958), 128 Ind. App. 416, 427, 149 N. E. 2d 315.

Taking the instructions as a whole, it seems quite clear that the jury was instructed that it could allow recovery only upon finding appellants guilty of some act or omission charged as negligence in the complaint.

In their 11th specification of error, appellants complain of court's Instruction No. 28, wherein the jury was told that the allegation in the complaint to the effect that appellee was a "guest" in the automobile operated by her son denoted that she was a nonpaying passenger; that such a guest, exercising no control over the automobile, is required to use only that degree of

care which an ordinarily prudent person in like circumstances would use under the same or similar circumstances; that the negligence of the driver is not imputed to such guest and is no defense for the negligence of a third prson, if any.

The objection was to the effect that the instruction did not provide for the possibility of joint enterprise, or that the guest had some control over the automobile, the driver, or the manner in which it was driven. In connection with this, appellants bring out the fact that they tendered their Instruction No. 30 to the court, which was refused. That instruction purported to explain joint enterprise, and stated that if the jury found that appellee and her son were engaged in such a joint enterprise, and the son was negligent, which negligence proximately contributed to her injury, she could not recover from appellants. Error is claimed in the refusal to give this instruction.

The only authority cited by appellants to support their contention is a reference to Flanagan, Wiltrout and Hamilton's Indiana *Trial and Appellate Practice*, §1510, Subsec. 12, page 240, several cases mentioned therein, and Works Indiana Practice, Vol. 3, page 456. These state the general proposition that a party is entitled to have the jury instructed on his theory of the case, if supported by some evidence and within the issues. We do not see how that rule applies herein, for neither in the pleadings nor in the evidence did appellants suggest or imply that joint venture was the theory of their case. Appellants filed an answer to the complaint, which was in one paragraph and in the nature of a general denial. The only evidence brought forth at the time concerning the trip into Valparaiso was a statement by the son, Charles, who said he was going to cash a check at the bank, and the statement by ap-

pellee in her conditional examination that she came to town to buy groceries. There was no more evidence presented by either side about the purpose of the trip.

To establish a joint enterprise, an essential element is the existence of joint control over the management and operation of the vehicle and over the course and conduct of the trip. There must be a community of interest in the object and purpose of the undertaking and an equal right to direct and govern the movements and conduct of each other in respect thereto. As between the parties, there must be a contract, either express or implied, to that effect. *Spencer* v. *Pettibone* (1947), 117 Ind. App. 426, 70 N. E. 2d 439. From the evidence presented, no reasonable inference could have been drawn by the jury that appellee and her son were engaged in a joint enterprise. The court committed no error in giving Instruction No. 28 and in refusing appellants' tendered Instruction No. 30.

The 12th specification of error concerned court's Instruction No. 29. Therein the court instructed the jury that the negligence and contributory negligence of both drivers was an issue in the case; that if there was negligence on the part of Charles, which was the sole and only proximate cause of appellee's injuries, the verdict should be for appellants; that if there was negligence on the part of both drivers so that the acts of either or both of them proximately caused the injuries, appellee could recover in the absence of contributory negligence on her part; that contributory negligence on the part of appellee would bar her recovery, but that negligence on the part of her son, Charles, would not do so unless it was the sole and only proximate cause of the injuries.

The objection to the instruction was that it did not make an exception if appellee and her son were on a

joint enterprise. For the reasons we have previously set forth pertaining to court's Instruction No. 28 and plaintiff's tendered Instruction No. 30, we find there was no error in giving this particular instruction.

Specifications 17 through 20 claim that appellee falsely and fraudulently, with intent to deceive the court and jury, represented that she was unable to walk without assistance, when, in fact, she was able to walk; that she gave false and perjured testimony as disclosed by her conditional examination; that appellants were deceived, surprised, and unprepared to meet the issues so raised, thus charging misconduct on the part of the prevailing party, the appellee herein. Affidavits were filed with the motion for new trial, purporting to substantiate these charges. Appellee filed counter-affidavits, which were stricken from the files due to the fact that they were not presented in time. Although they are included in the transcript as part of the record, such counter-affidavits will not be considered. This means that the affidavits presented by appellants must be considered as true. However, the substance of appellants' affidavits pertain to the conduct, demeanor, and statements of the appellee and of certain of her witnesses which took place prior to or during the trial. No objections were made by appellants to such alleged misconduct at the time. This should have been done if appellants considered such to be misconduct. In *Citizens St. R. Co.* v. *Stockdell* (1902), 159 Ind. 25, 27, 62 N. E. 21, 22, the Supreme Court said as follows:

"It is charged in the motion for a new trial that the plaintiff was guilty of misconduct while on the witness stand, by making a feigned and theatrical display of distress and emotion, and an affidavit to this effect is filed with said motion. No objection having been made by the appellant to the conduct

of the appellee at the time referred to, the question of its propriety was not presented to the trial court, and is not before us on this appeal."

In *Ostrowski et al.* v. *Estate of Ostrowski et al.* (1956), 126 Ind. App. 413, 416, 417, 418, 131 N. E. 2d 345, 347, this court said as follows:

"Appellants admit they made no objections to the alleged misconduct. They did not request the court to admonish the jury to disregard the alleged misconduct. They made no motion to withdraw the submission of the case from the jury. The question of such misconduct was raised for the first time in their motion for a new trial.

. . . . .

"For many years it has been well settled in this jurisdiction that to reserve a question on appeal of misconduct on the part of counsel or the parties it is necessary:

" '(1) To promptly interpose and state their objection, if reasonably required, to the objectionable language or argument, and request the court to so instruct the jury as to counteract any harmful effect of such language or argument, and if granted, and such instruction was not sufficient to cure the error, follow such action by a motion to have the submission set aside; (2) to promptly object to the improper language or argument of counsel, and move to set aside the submission, stating reasons why the harm done could not be cured by any action the court might take in the matter.' *Gamble* v. *Lewis* (1949), 227 Ind. 455, 467, 85 N. E. 2d 629; *Umbstead et al.* v. *Preachers' Aid Society of the Northwest Conference of the Methodist Episcopal Church* (1944), 223 Ind. 96, 103, 58 N. E. 2d 441; *Ramseyer, Executor, et al.* v. *Dennis* (1918), 187 Ind. 420, 439, 440, 116 N. E. 417, 119 N. E. 716; *Citizens Street Railroad Company* v. *Stockdell* (1902), 159 Ind. 25, 27, 62 N. E. 21; *Staser et al* v. *Hogan et al.* (1889), 120 Ind. 207, 222, 21 N. E. 911, 22 N. E. 990.

"Appellants did not properly reserve the question of the alleged misconduct of the parties at the trial of this action."

Appellants herein cannot bring in through the back door, after the case has been decided adversely to them, evidence which they claim supports their cause, by way of a motion for new trial. In the *Ostrowski* case, *supra*, this court quoted with approval the following statement from *Gamble* v. *Lewis* (1949), 227 Ind. 455, 467, 85 N. E. 2d 629, 635, *supra*:

> " 'We cannot permit litigants to gamble on the possibility of a favorable verdict, and after an adverse verdict has been returned set it aside on appeal when the losing parties failed to move that the submission be set aside when the alleged error occurred.' "

Nowhere do these affidavits show that appellants could have been so taken by surprise that by ordinary prudence they could not have conceivably protected themselves against the facts they allege. This is the requirement when application for new trial is made pursuant to this provision of the statute. Section 2-2404, Burns' Ind. Stat., 1946 Replacement; *Working* v. *Garn et al.* (1897), 148 Ind. 546, 47 N. E. 951; *Snodgrass* v. *Hunt* (1860), 15 Ind. 274.

The court made no error in overruling these specifications in the motion for new trial.

Finally, appellants specify error that the damages awarded by the jury were excessive. There was testimony by appellee, her son, her daughter, and her daughter's mother-in-law that appellee was in "good health" until the accident. We have previously set forth appellee's physical condition subsequent thereto. Reputable physicians testified that she suffered permanent brain damage, aggravated a preexisting heart condition, and sustained a 25 per cent permanent loss of the function of her right arm as a result of the fracture. In *Chi. &*

*Cal. Dist. Transit, etc.* v. *Stravatzakes* (1959), 129 Ind. App. 337, 354, 156 N. E. 2d 902, 910, this court said:

"To warrant a reversal on the ground that the damages are excessive, it must appear that the damages assessed were so grossly and outrageously excessive as to induce the belief that they were the result of prejudice, partiality or corruption. *Swallow Coach Lines, Inc., et al.* v. *Cosgrove* (1938), 214 Ind. 532, 15 N. E. 2d 92; *Armstrong Cork Co.* v. *Maar* (1953), 124 Ind. App. 105, 111 N. E. 2d 82, 112 N. E. 2d 240, *supra.*"

There was sufficient evidence of a substantial nature herein that would have permitted a jury to consider the appellee's suffering, the nature of her injuries, her health, habits, and pursuits before and after the accident without bias or prejudice. It must also be remembered that the trial judge was in a position to determine whether there was passion and prejudice existent, such as would unduly influence the jury in assessing damages when he passed on the motion for new trial. *Yellow Cab Co.* v. *Kruszynski* (1935), 101 Ind. App. 187, 196 N. E. 136.

For these reasons, we shall not disturb the judgment because of alleged excessive damages.

Judgment affirmed.

Ryan, P. J., and Ax and Cooper, JJ., concur.

NOTE.—Reported in 175 N. E. 2d 715.