INDIANA GROSS INCOME TAX DIVISION OF THE
STATE OF INDIANA *v.* MUSSELMAN, ETC.

[No. 20,276. Filed December 17, 1965. Rehearing denied January 17, 1966. Transfer denied May 16, 1967.]

*John J. Dillon*, Attorney General, *Edwin K. Sterrs*, Former Attorney General, and *Charles D. Rodgers*, Deputy Attorney General, for appellant.

*Raymond H. Zirkle, G. Richard Ellis*, and *Ellis & Gamble*, all of Kokomo, for appellee.

MOTE, J.—This appeal emanates from an action for a declaratory judgment pursuant to the provisions of the Uniform Declaratory Judgments Act, the same being § 3-1101 *et seq.*, Burns' 1946 Replacement. This action was initiated by appellee, Robert Musselman, doing business as Musselman Music Service, for a judicial determination of the correct application of the provisions of the Gross Income Tax Act of 1933, being § 64-2601 *et seq.*, Burns' 1961 Replacement, as regards the taxable gross receipts of appellee from the operation of coin operated juke boxes and amusement devices.

By Instruction 4-175, constituting merely the Gross In-Come Tax Division's interpretation of the law in the Gross Income Tax Act of 1933, the appellant, in essence, requires appellee to pay a tax on the entire gross income derived from coin operated non-vending machines.

Instruction 4-175 is as follows:

"INSTRUCTION 4-175, COIN OPERATED NON-VENDING MACHINES. The entire gross income derived from coin operated phonographs, scales, radios, moving picture machines and other equipment of a similar nature, which do not deliver merchandise to the user, and which

are not covered in Instruction 4-173, is considered as received 'from any source whatsoever' under Sec. 3(g) and is taxable to the owner or operator at the rate of 1%. No deduction will be allowed for rentals, commissions or other operating expenses paid to or retained by those in charge of the equipment or the location owner. (See Secs. 1(m), 3(g) and Inst. 4-8.) The owner of the location or other person in whose charge the machine is placed, is taxable upon all splits, rentals or other amounts received from such activities at the rate of 1%. (See Secs. 1(m), 3(g) and Insts. 3-20 and 4-8.)"

The appellee for the years in question herein reported gross income amounts equal to fifty percent (50%) of the total amount of monies deposited in said non-vending machines. Following an investigation of the said taxpayer, he was subsequently taxed on the entire one hundred percent (100%) of the monies derived from said machines, pursuant to the appellant's said Instruction 4-175.

The issues were formed by the filing of appellee's complaint for declaratory judgment and the filing of appellant's answer. The issues thus formed present the following question:

1. When the appellee is the owner of electrically operated non-vending machines, operated by means of the user or patrons thereof placing coins therein, where the appellee has placed such machines under an agreement whereby the appellee is responsible for the maintenance, repairing and servicing of said machines and the location owner is responsible for furnishing a location therefor, the electricity to operate and energize said machines, the providing of change for the users of said machines and with the duty of notifying the appellee if said machines become out of repair or non-operable, whereupon the *appellee and the location owner agree that the monies deposited in said machines by the users thereof, shall be divided upon a 50-50 basis between the appellee and the location owner when removed from said non-vending machines,* what are the gross receipts taxable to appellee under the provisions of the Gross Income Tax Act of 1933?

On the 27th day of April, 1964, the Superior Court of Howard County entered judgment for the appellee, Robert

H. Musselman, doing business as Musselman Music Service, upon appellee's contention that a joint adventure existed and that the appellee's tax liability should be based only upon fifty percent (50%) of the gross receipts produced by appellee's coin operated non-vending equipment.

The appellant filed a Motion for a New Trial which was overruled. It assigns as error on appeal the overruling of said Motion for New Trial on the following grounds:

"1. The decision of the court is not sustained by sufficient evidence.
2. The decision of the court is contrary to law."

In consideration of the asserted errors and the record before us, there are several reasons why this appeal cannot be sustained. However, to enumerate all of said reasons with substantial authority would extend this opinion beyond necessary length.

This Court is impressed with the written opinion and decision of the trial court, reported verbatim in appellant's brief. Then, again, we find it unnecessary for our purposes to set forth the entire opinion. Such parts thereof as appear to be the most cogent and applicable to the facts at bar are as follow:

"Nor does this Court feel that the arrangements between the plaintiff and his location owners necessarily involves a lease either of the juke boxes or of the locations which they occupy or that any payment of rent is necessarily involved in these arrangements.

"It seems to the Court that all of the elements of joint venture are present in these arrangements between plaintiff and his owners, although the venture is for the limited purpose of operating a juke box and although each of the parties has other interests not involved in the joint venture.

"1. Certainly there is a contract between plaintiff and the location owners.

"2. The purpose of this contract is to engage in business.

"3. Each contributes property and effort to the venture.

"4. The venture is for their joint profit.

"5. Each party has certain elements of control and responsibility over the venture.

"The discussion both in the evidence and in the briefs about share crop agreements and the department's instruction 4-29 only serves to show how instruction 4-175 is discriminatory in that two groups of taxpayers occupying substantially the same legal relationships are given radically different tax treatment under instructions 4-29 and 4-175.

"The Court therefore finds that the plaintiff's true gross income is fifty per cent of the monies taken in through the various juke boxes which he operates under agreements whereby the location owners are entitled to fifty per cent of that income and that plaintiff is entitled to be taxed accordingly; that the department's instruction 4-175 is arbitrary, unauthorized and discriminatory and therefore void to the extent that it would require plaintiff to pay tax on all monies passing through his juke boxes without regard to what money is actually received by the plaintiff."

Instruction 4-29, above referred to, provides as follows:

"CROP SHARE FOR RENTALS. When a farm is operated on a 'share' basis, the landlord's proceeds from the sale of his share will be taxable to him at the same rate as applied to sales of farm products whether the share is sold by him or by his tenant. (See Instructions 4-27).

"The receipt by the landlord of his share is not taxable to him but any subsequent sale of any property included in his share is taxable under the above indicated provisions.

"Provided, however, that when land is rented for a stated value rather than a per centage or 'share', the rental received will be taxable at 1% whether received in cash or crops or the value of anything else received thereof. (See Section 3 and Instructions 4-8)."

There is merit, we think, in the trial court's determination that the facts of the case on appeal fairly meet the requirements in the establishment of a joint adventure. *Baker, etc., et al* v. *Billingsley, et al.* (1956), 126 Ind. App. 703, 132 N. E. 2d 273; *Oppenheimer* v. *Craft* (1961), 132 Ind. App. 452, 175 N. E. 2d 715.

Furthermore, it appears to this Court that the application by the Gross Income Tax Division of Instructions 4-29 and 4-175, which do not even tend to have the force of law since 1956, amounts to discrimination, as they concern two different groups of taxpayers occupying substantially the same legal relationships. While this opinion and decision practically could be based on either one or the other theory, and indeed other theories, we finally determine that the contracts between the location owners and the appellee, providing the method of operation and respective duties of each, as well as that each party receive one-half ($\frac{1}{2}$) of the gross receipts, fairly established a joint adventure, thus creating tax liability on the respective parties in accordance with the distribution of the funds derived from such joint adventure. See § 64-2607, Burns' 1961 Replacement.

Appellee cites in his brief a case from another jurisdiction which appears to be parallel with the case at bar, namely, *Herbert Laurel Ventura* v. *Herbert Laurel Ventura, Inc.* (1943), 138 Pac. 2d 43, 58 Calif. App. 2d 684, in which it was held that the parties to the contract who "split" the receipts from juke boxes were engaged in a joint adventure and therefore the gross receipts of the machines were not to be considered in determining the lessee's liability to the building owner to pay as rental a percentage of "gross receipts."

Appellee cites 48 C. J. S., *Joint Adventures,* § 11, p. 837, that:

"Since each member of a joint adventure, by virtue of his contribution to the capital invested therein, or by the performance of services in connection therewith, acquires an interest in the property and business of the enterprise, it follows as a necessary consequence from the character of the undertaking that he is *entitled* to share in the profits derived therefrom. . . ." (Emphasis supplied.)

This Court, having found that a joint adventure existed in the case at bar and that the decision of the trial court is sus-

tained by sufficient evidence and not contrary to law, affirms the decision and judgment of the court below.

Smith, P. J., Bierly and Hunter, JJ., concur.

NOTE.—Reported in 212 N. E. 2d 407.