Arthur and Maye WELBORN, Appellants
(Defendants Below),

v.

SOCIETY FOR the PROPAGATION OF
the FAITH, Appellee (Plaintiff Below).

No. 2–878A299.

Court of Appeals of Indiana,
Second District.

Oct. 29, 1980.

Richard L. Zweig and Jonathan E. Butterfield, Legal Services Organization of Indiana, Inc., Indianapolis, for appellants.

Michael R. Fisher, Indianapolis, for appellee.

SHIELDS, Judge.

Arthur and Maye Welborn appeal from a judgment of $365 in favor of the Society for the Propagation of the Faith (Society).

The facts most favorable to the judgment are as follows:

April 7, 1972 Maye Welborn approached Father Victor Goossens at the rectory of St. Mary's Church and inquired whether he knew of a place where her family could live. Maye, her husband, and three children were without a place to live as their landlady at their prior residence had terminated the utility service. It was cold at the time and the family was "desperate to find a place to live."

Goossens brought Maye to a half of a double located at 611 E. Arch Street, Indianapolis. The house was owned by the Society of which he was the director. Together they inspected the house and Maye noted many defects on the premises as they were "out in the open where you could see them."

May and Goossens made an oral lease agreement whereby the Welborns rented one-half of the furnished double, including utilities, for $55 per month. Goossens was in the process of remodeling the double and represented he would be over sometime within the next few weeks to make repairs and finish the remodeling.[1] He also told Maye he would get some new windows, lower the ceiling, and provide more furniture.

The Welborns and their three children moved into the double. The Welborns commenced paying rent in May. When Arthur Welborn obtained steady employment Goossens increased the rent to $65 per month. In September 1973 Arthur Welborn obtained more gainful employment and Goossens raised the rent once more to $25 per week. The Welborns refused to pay this increase in October 1973. In fact, they refused to pay any rent based on the fact Goossens did not make the majority of the promised repairs even though several requests had been made. On October 22, 1973 the Marion County Health and Hospital Corporation condemned the house and gave the Society until December 29, 1973 to make the neces-

---

1. In fact, some of the remodeling was done during the Welborn's tenancy.

sary repairs.[2] Although no rent was being paid, the Welborns continued to live in the double for four more months during which time Goossens continued to pay the utilities. However, during these four months the electrical services were disconnected on two separate occasions. The first occasion occurred in November 1973. The Health and Hospital Corporation was contacted immediately and the electrical service was reestablished. The second occasion was on January 3, 1974. Again the Health and Hospital Corporation was notified and ordered the service reconnected. However, the electrical service was not reconnected until January 9, 1974 when the Society was ordered by the Municipal Court to reinstate the service. When the Welborns moved out on January 13, 1974 they had paid $1,035 on a total rent bill of $1,400.

The Society initiated this action seeking possession of the leased premises and damages for the alleged non–payment of rent by the Welborns. The Welborns filed an answer denying all the allegations in the Society's complaint. Further, as affirmative defenses and counterclaims, they alleged the following:

(1) the Society's breach of an implied warranty of habitability;

(2) the Society's breach of an implied warranty of compliance with local housing laws implied by operation of law into the parties' lease;

(3) the Society's breach of contract by failing to repair certain defects as promised by its agent Goossens;

(4) the Society's negligence in failing to comply with the Marion County Health Code, entitling Welborns to compensatory damages.

After a trial to the court a general judgment in the Society's favor was entered as follows:

"This cause having been taken under advisement the court now finds for the Plaintiff and against Defendants. Judgment for Plaintiff against Defendants in sum of $365.00 judgment that Defendant take nothing by this counter–claim, cost in Defendants." [3]

On appeal the Welborns allege the trial court's decision was contrary to law in failing to find their affirmative defenses barred any recovery by the Society and in denying their counterclaim.

The issues raised by Welborns' first three contentions are: Should the law of the State of Indiana:

(1) imply the warranties advanced in the Welborns' argument in all residential leases, and

(2) treat residential leases as ordinary contracts with dependent covenants? [4]

Our analysis of the issues compels the conclusion that it is unnecessary to decide the underlying contentions of the Welborns' appeal.

I

■ Because the Welborns bore the burden of proof on their counterclaim, their

---

**2.** The repairs were never made; however, the Welborns received permission from the Health and Hospital Corporation to continue living in the premises.

**3.** Welborns successfully appealed the trial court's original action dismissing their complaint for failure to state a claim under Ind. Rules of Procedure, Trial Rule 12(B)(6). They now argue the prior decision of the Court of Appeals that the dismissal was erroneous is the "law of the case." However, because we *assume* the law is as Welborns contend, we do not address this argument.

**4.** Arguably Indiana does treat leases as ordinary contracts containing dependent covenants. This may be implied from the Supreme Court decision in *Morrison's Southern Plaza*

*Corp. v. Southern Plaza Inc.*, (1969) 252 Ind. 109, 246 N.E.2d 191. Under the traditional approach to leases, the courts have viewed the covenants as independent; *i. e.,* if a landlord breached a promise of the lease, the tenant was not excused from his performance–rent. The tenant to recover for the breach would have to continue paying rent and sue for damages for the breach. In *Morrison's* our Supreme Court, without discussing the issue, treated the covenants as dependent. The tenant was permitted to assert as a defense for his nonpayment of rent a breach of a non–competition covenant. *But see, Magee v. Indiana Business College*, (1929) 89 Ind.App. 640, 166 N.E. 607; *McCoy v. Oldham*, (1891) 1 Ind.App. 372, 27 N.E. 647.

appeal may only attack the trial court's negative judgment as being contrary to law. The standard of review when a party appeals from a negative judgment is absolute. It is only when the evidence is without conflict and leads to but one conclusion and the factfinder reached a contrary conclusion that the decision will be disturbed as contrary to law. *Brown v. Owen Litho Service, Inc.,* (1979) Ind.App., 384 N.E.2d 1132.

Assuming, *without deciding,* that: (1) implied warranties of habitability and compliance with local housing laws exist in this state; (2) a specific promise to repair supported by consideration was made by Society; (3) the warranties and promise to repair was materially breached by Society; and (4) covenants in a lease are dependent as opposed to independent, we are constrained by our standard of review to reject the Welborns' argument that the trial court erred in rejecting their counterclaim.

■ The record presented us on appeal is devoid of any evidence of the fair rental value of the rented premises as impliedly warranted or as promised. While a reasonable inference is that in fact the Welborns were injured by or assumed material breaches of implied warranty and express promises, the trial court was not at liberty to speculate, guess, or surmise as to the value of the injury. Or, stated otherwise, without evidence of the issue of the value of the injury, any award by the trial court other than nominal damages would be based on speculation, guess, or surmise and therefore erroneous. Furthermore, the fail-

ure to award nominal damages is not reversible error. *Rauch v. Circle Theatre,* (1978) Ind.App., 374 N.E.2d 546.

■ It is axiomatic that the burden of proving damage rests with the party asserting the issue. Thus, for example, a party asserting damage resulting from a breach of contract must substantiate the damage from the breach. *Rauch.* Similarly, a party seeking relief for breach of warranties under the Uniform Commercial Code must offer evidence of the damage resulting from the breach. IC 26–1–2–714(2) (Burns Code Ed.). So also must a claimant seeking damages for breach of an express covenant offer evidence of the damage. *Ross v. Stockwell,* (1898) 19 Ind.App. 86, 49 N.E. 50.[5]

Thus, assuming arguendo the contractual dependent covenant treatment of a lease, a material breach of an express promise to repair, and a material breach of implied warranties of habitability and compliance with local housing laws, the judgment of the trial court on Welborns' counterclaim was not contrary to law.

II

Welborns also argue the trial court's judgment was erroneous in that it denied them any relief in the form of rent abatement or reduction under their affirmative defenses of breach of implied warranty and express promise to repair.

■■ Our resolution of this argument is within the framework of our appellate obli-

---

**5.** Furthermore, our review of jurisdictions which treat a lease as a contract containing various forms of implied warranties reveals evidence of the damage is a common thread to relief.

There is a split of authority in other jurisdictions as to the proper measure of damages where a tenant remains in possession of the leased premises and either sues or defends on the basis of breach of warranty. When a party accepts a nonconforming breach the standard contract measure of damage for the breach is the difference between the value of the performance as warranted and the value of the performance as received (*See, e. g.,* IC 26–1–2–714[2] [Burns Code Ed.])–the difference be-

tween the value of the premises as warranted and the value of the premises in their uninhabitable condition. This measure of damages has been applied in several jurisdictions. *See, e. g. Green v. Superior Court,* (1974) 10 Cal.3d 616, 111 Cal.Rptr. 704, 517 P.2d 1168; *Mease v. Fox,* (Iowa, 1972), 200 N.W.2d 791. However, other jurisdictions apply a different measure of damages–the difference between the agreed rent under the lease and the fair rental value of the premises as they were during occupancy by the tenant in the unhealthful or unsafe condition. *See, e. g. King v. Moorehead,* (Mo.App. 1973) 495 S.W.2d 65; *Kline v. Burns,* (1971) 111 N.H. 87, 276 A.2d 248; *Pines v. Perssion,* (1961) 14 Wis.2d 590, 111 N.W.2d 409.

gation to affirm the trial court's general judgment under any permissible theory supported in evidence. *Berrey v. Jean*, (1980) Ind.App., 401 N.E.2d 102, 103. Under the assumptions of law we have previously made we assume Welborns met their burden of proof on their affirmative defenses, Ind. Rules of Trial Procedure, TR. 8(C), of showing material breaches of implied warranty of habitability and dependent contractual covenants.

The relief sought by Welborns was, in essence, rent abatement or reduction during the period of their occupancy of the premises. However, throughout the period in question Welborns were in possession of the double and, as a result, Society provided part performance.

■ One standard measure of damages for breach of warranty when there is part performance by the breaching party is the difference between the value of the performance as warranted and the value of the performance as received. In this case that would be the difference between the value of the premises as warranted and the value of the premises in their present condition. Other courts have applied a slightly different standard—the difference between the agreed rent and the fair rental value of the premises in their present condition.[6]

■ It is readily apparent that under either of these measures of damage Welborns' defense of a material breach of implied warranties failed. As discussed earlier, the record is devoid of *any evidence that the fair rental value of the premises was less than the actual amount* for which the premises were rented.

We now look to the assumed material breach of dependent covenants. Welborns argue Society's material breach of its express promise to repair relieved them of their express promise to pay rent. We disagree.

This court has recognized and applied Section 357 of Restatement of Contracts which allows restitution in favor of a breaching party under a contract. *Morrison's Southern Plaza Corp. v. Southern Plaza, Inc.*, (1969) 252 Ind. 109, 246 N.E.2d 191. This section provides:

"(1) Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non–performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment, except as stated in Subsection (2), for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach, in no case exceeding a ratable proportion of the agreed compensation, if

(a) The plaintiff's breach or non–performance is not willful and deliberate; or

(b) the defendant, with knowledge that the plaintiff's breach of duty or non–performance of condition has occurred, or will thereafter occur, assents to the rendition of the part performance, or accepts the benefit of it, or retains property received although its return in specie is still not unreasonably difficult or injurious.

"(2) The plaintiff has no right to compensation for his part performance if it is merely a payment of earnest money, or if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty.

"(3) The measure of the defendant's benefit from the plaintiff's part performance is the amount by which he has been enriched as a result of such performance unless the facts are those stated in Subsection (1b), in which case it is the price fixed by the contract for such part performance, or, if no price is so fixed, a ratable proportion of the total contract price."

---

**6.** See fn. 5 *supra*.

■ That general rule, as applied to this case, allows the trial court to award restitutionary relief to Society if:

(1) Society has rendered a part performance under the contract that is a net benefit to the Welborns, and

(2) The Welborns, with knowledge of the breach, have accepted the benefit of Society's part performance.

As this court determined in *Morrison's*, the staying in possession of the premises is "certainly enough of a benefit to satisfy the first two elements required for a restitutionary remedy." *Morrison's* at 116, 246 N.E.2d at 195.

The restitutionary recovery obtainable by Society as fixed by the Restatement is the amount by which the benefit received by Welborns exceeds the harm caused them by Society's breach. The measure of the benefit is the agreed rent fixed for the part performance or, if none was set, a ratable proportion of the total agreed rent.

The question then is one of whether the record supports the judgment for Society in the amount of $365.00, i. e., is there sufficient evidence of probative value that the benefit of the part performance (providing premises in their existing condition) was $365. The evidence reveals Welborns failed to pay any rent for the months of October, November, December, and in January until they vacated the premises on January 13, 1974. The rent sought for this period is $25 per week including all utilities. During those months Society paid the sum of $499.72 for utilities for the double. However, the family in the other part of the double vacated it in November so the major portion of the utilities paid in January ($181.52) was allocable to Welborns' occupancy. This factor, coupled with Society's evidence that the rent demanded was $25 per week, leads us to the conclusion that the trial court did not commit reversible error in finding the benefit was the amount for which the premises were in fact rented.

We therefore hold that there was sufficient evidence of probative value to support the trial court's judgment which implicitly included a finding that the reasonable rental value of the premises as they existed was the rent requested and that there was a lack of evidence to compel a finding that the Welborns were damaged by the Society's breach.

III

Finally, the Welborns argue the Society's failure to comply with the housing code constituted negligence *per se* or negligence as a matter of law.

Again we need not decide the underlying question they present, i. e., whether failure to comply with the ordinance at issue constitutes negligence *per se*. If it were negligence *per se*, the Welborns would still be required to prove that the negligence was the proximate cause of compensable injuries. *Ray v. Goldsmith*, (1980) Ind.App., 400 N.E.2d 176. They failed to present any evidence connecting the housing code violations with the injuries.

■ Welborns sought damages for two alleged injuries–colds suffered by Mr. Welborn and two of the Welborn children and for mental anguish resulting from the termination of the electrical service in November 1973 and January 1974. However, the only evidence of proximate cause, assuming negligence, is Mrs. Welborn's claim that prior to the electricity cutoff no one in her family suffered any illness whereas while the electricity service was off her husband and the two children suffered colds. We cannot say, under our standard of review, that the evidence led only to the conclusion that the colds were proximately caused by the shutoff of electrical service.

■ Similarly, the evidence surrounding the shutting off the electrical service is singularly devoid of the compelled inference that any conduct of Society was "... willful, callous, or malicious, which may produce a variety of reactions, such as fright, shock, humiliation, insult, vexation, incon-

venience, worry or apprehension." *Charlie Stuart Oldsmobile, Inc. v. Smith*, (1976) Ind. App., 357 N.E.2d 247, 254. The evidence is that the electrical service to the double was terminated but there is no evidence whatsoever as to the circumstances surrounding the termination.[7]

Judgment affirmed.

7. For example, termination may have been the result of insufficient funds with which to pay

BUCHANAN, C. J., concurs.

SULLIVAN, J., concurs in result.

the electrical bill due to no rent being received.