**Thomas (Tommy) VETOR, Appellant (Defendant Below),**

v.

**Richard SHOCKEY and Judy Shockey, Appellees (Plaintiffs Below).**

**No. 2–279A44.**

Court of Appeals of Indiana, Second District.

Dec. 4, 1980.

Dennis V. Panarisi, Marion, for appellant.

SULLIVAN, Judge.

Judy and Richard Shockey filed a small claims action against Thomas Vetor on April 24, 1978, alleging that they had purchased a house from Vetor in October of 1977, that Vetor had warranted that the septic tank was in working order, but that in fact the septic system needed extensive repair. After a bench trial the court found the following:

"[T]he defendant is liable to the plaintiff for latent defects not discoverable by the plaintiff's reasonable inspection which manifested themselves after the purchase of the realty in question. This being specifically, that there was an *implied warranty* that the septic system was in proper working order and that subsequent to the purchase, the plaintiff did find that the septic tank was not in proper working order." (Emphasis supplied.)

Vetor presents one issue for our review, namely: did the trial court err, as a matter of law, when it determined that an implied warranty of habitability existed in the sale of a used home by a non builder-vendor?[1]

1. The warranty referred to in the Shockey's statement of claim is by necessity the implied warranty of habitability, as the U.C.C. express and implied warranties arise only in the sale of

■ At the outset, we note that the Shockeys, the appellees, have not filed a brief. Therefore, to obtain reversal, the appellant's brief need only demonstrate prima facie reversible error. *Wagner Construction Co. v. Noonan* (1st Dist. 1980) Ind.App., 403 N.E.2d 1144, 1146; *J. E. G. v. C. J. E.* (2d Dist. 1977) 172 Ind.App. 515, 517, 360 N.E.2d 1030, 1033.

This action was brought in small claims court and under the informal procedures prescribed for such courts, no trial transcript was made. However, pursuant to the procedure outlined in Ind. Rules of Procedure, Appellate Rule 7.2(A)(3)(c), Vetor submitted a statement of the evidence adduced at trial to both the trial judge and the Shockeys. Approximately two weeks later the court, without objection from the Shockeys, certified that statement to be a true and accurate account of the proceedings. The facts as gleaned from that statement are as follows: The Shockeys purchased the house from Vetor in October of 1977; Vetor had owned and occupied the home for four years but had not built it. The purchase agreement specified that Vetor would deliver a general warranty deed conveying the real estate "in the same condition as it now is, ordinary wear and tear excepted . . . ." Prior to taking possession, the Shockeys questioned Vetor about the condition of the septic system, which was installed by an independent contractor in October of 1973, and he informed them that the system was in "satisfactory working condition except for certain times of the year when there would be a lot of water on the ground, the septic system might be a little slow." The Shockeys experienced trouble with the system, manifested by the malfunctioning of the toilet and the washing machine. They obtained an estimate for the cost of repair amounting to $1000.50.

Under the common law tradition, the doctrine of *caveat emptor* governed the purchase of real estate. The theory underlying *caveat emptor* was that buyers and sellers dealt at arm's length and that if the purchaser sought any warranties, those warranties should be negotiated and incorporated into the written contract. Additionally, purchasers were presumed to have the means and the opportunity to examine the property and judge its qualities for themselves.

Recently, *caveat emptor* has been viewed with disfavor and many jurisdictions including Indiana have adopted the doctrine of implied warranty of habitability for the purchase of a new home from a builder-vendor. In part, this is due to a recognition of the sale of goods concept that a sound price merits a sound article. *Humber v. Morton* (Tex.1968) 426 S.W.2d 554. In addition, the following rationales have been offered:

1. caveat emptor encourages unscrupulous, shoddy workmanship,

2. buyers of mass produced development homes are not on equal footing with builder-vendors,

3. the purchase of a home is not an everyday transaction so, as a result, most purchasers are inexperienced and must rely on the skill and expertise of the builder-vendor.

*See Barnes v. Mac Brown & Co.* (1976) 264 Ind. 227, 342 N.E.2d 619; *Theis v. Heuer* (1972) 264 Ind. 1, 280 N.E.2d 300. In the *Barnes* case, *supra*, our Supreme Court extended the protection of the home builders' implied warranty of habitability to a subsequent purchaser. *See also Wagner Construction Co. v. Noonan, supra*, 403 N.E.2d at 1146–47.

We also note that the ruling of the trial court here parallels the language used by our Supreme Court in *Barnes v. Mac Brown & Co.* (1976) 264 Ind. 227, 229, 342 N.E.2d 619, 621, where the implied warranty of habitability was extended to include subsequent purchasers of real estate from a builder-vendor.

"goods". *E. g., Thompson Farms, Inc. v. Corno Feed Products, Division of National Oats Co.* (1st Dist. 1977) Ind.App., 366 N.E.2d 3, 14, 15. This disparity in the rules of law governing the sale of goods (or personal property), and those governing the sale of real property where *caveat emptor* reigned supreme, was the primary impetus behind the judicial creation of the implied warranty of habitability. *Theis v. Heuer* (1972) 264 Ind. 1, 9, 280 N.E.2d 300, 304.

Our research, however, has uncovered no Indiana cases expanding this implied warranty concept to the purchaser of a *used* house from a *non* builder-vendor. Those jurisdictions which have been confronted with such factual situations have universally rejected such expansion. The refusal to extend the doctrine is seemingly premised on the idea that in the sale of *used* housing, the vendor usually has no greater expertise in determining the quality of a house than the purchaser. *Waggoner v. Midwestern Development Inc.* (1967) 83 S.D. 57, 154 N.W.2d 803; *see Gallegos v. Graff* (1973) 32 Colo.App. 213, 508 P.2d 798; *Spano v. Perry* (Sup.Ct.1969) 59 Misc.2d 1062, 301 N.Y.S.2d 836; *Cohen v. Blessing* (1972) 259 S.C. 400, 192 S.E.2d 204.

■ The extension of the doctrine to purchasers of used homes from non builder-sellers is not totally without support however. Paul Haskell in his article *The Case for an Implied Warranty of Quality in Sales of Real Property*, 53 Geo.L.Rev. 633 (1965) argues persuasively:

"Most sales of personal property involve new goods. Most sales of real property involve used construction. If the implied warranty is recognized only in the sale of new construction, then the law offers only occasional protection to the purchaser. The typical sale of improved real estate involves a good deal of money; in the case of the home purchase, it usually is the largest single investment the purchaser makes in his lifetime. To conclude that there are no implicit assumptions as to quality when the breadwinner earning 13,500 dollars invests 30,000 dollars in a house is absurd. Any distinction between the purchase of the new house and the purchase of the used house with respect to assumptions as to quality is wholly unrealistic; the only difference is in the degree of expectation.

. . . . .

[T]here should be an implied warranty of merchantability in every sale of *used* construction, whether the seller be a merchant in the field of real estate or a nonmerchant, subject to the exclusion of known or discoverable defects. The determination of what constitutes merchantability here also must be left to the judgment of individual courts and juries. It is clear that the problem of merchantability is more complex in the case of used construction than it is in the case of new construction. The purchaser's justifiable expectations are quite different in each instance. In view of the fact that this concerns the contingent liability of the nonmerchant, and the rather uncertain nature of merchantability in the case of used construction, a short period of exposure to potential liability is called for." 53 Geo.L.Rev. at 650–52.

Further, the Supreme Court of Wyoming, in discussing the abandonment of *caveat emptor*, remarked in dicta, "We do not include used housing in our holding but visualize that circumstances may require consideration of some sales as included." *Tavares v. Horstman* (Wyo.1975) 542 P.2d 1275, 1282. While we too recognize that there may be some situations which necessitate the expansion of the implied warranty of habitability to used housing, we decline to extend the doctrine to the case before us. We are not convinced that a non builder-vendor should bear the risk of latent defects. While the public interest may well be served by placing repair or replacement costs of a new home on the responsible vendor-builder who created the defect and is in a better economic position to bear the cost than the purchaser, these policy considerations are inapplicable where the house is an older one and the seller is not its builder. As for defects *known* to the vendor of an older home at the time of sale, the tort theories of misrepresentation or fraudulent concealment are alternatives open to the unknowing buyer. *E. g., Wilhite v. Mays* (1976) 140 Ga.App. 816, 232 S.E.2d 141, *affirmed*, (1977) 239 Ga. 31, 235 S.E.2d 532 (seller of a four year old home was liable for damages where he fraudulently misrepresented the condition of a septic system).

Based on the foregoing analysis, we reverse the judgment of the trial court. In so doing, we are cognizant of the principle of

appellate review which allows affirmance if a judgment is sustainable on any basis. *Thornton v. Pender* (1978) 268 Ind. 540, 550, 377 N.E.2d 613, 620. Here, the meager record presented for review due to the nature of the proceedings below[2], the limited scope of the trial court's judgment, and the lack of an appellees' brief militate against considering alternative theories of recovery.

Reversed and the cause is remanded with instructions to enter judgment for the defendant Vetor.

SHIELDS, J., concurs.

BUCHANAN, C. J., concurs in result.

2. On this score we share the sentiments of the First District stated in *Wagner Construction Co. v. Noonan, supra*, 403 N.E.2d at 1149 n.4:

"While we endorse the small claims procedure as an efficient and expeditious means of resolving disputes of minor monetary amounts, we recognize that there are shortcomings existing in those procedures which do not always present as complete a record as might be desired for appellate review."