Mayssun KAHF, Monzer Kahf, Mohamed Kuziez, Samar Kuziez, Mysa Kuziez, A Minor, By Mohamed N. Kuziez, Her Next Friend, Mohamed A. Jaghlit, Suaad Jaghlit, A Minor, By Mohamed A. Jaghlit, Her Next of Kin, Appellants (Plaintiffs),

v.

CHARLESTON SOUTH APARTMENTS, A Limited Partnership, Walter E. Justus, Zona L. Justus, and Justus Property Management, Inc., Appellees (Defendants),

and

Justus Construction Company, Inc., Reneau Electric Company, Inc., Revel Companies, Inc., and Phelps Dodge Industries, Inc., Non-Participating Appellees (Defendants).

No. 2-682A152.

Court of Appeals of Indiana, Second District.

April 9, 1984.

---

Halbert W. Kunz, S. Gregory Zubek, Kunz & Kunz, Abduallah A. Bade, Earl Townsend, Townsend, Hovde, Townsend, & Montross, Indianapolis, for appellants (plaintiffs).

William H. Vobach, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellee (defendant) Charleston Apartments South.

Richard R. McDowell, Mark A. Sidebottom, Hill, Fulwider & McDowell, Indianapolis, for appellees (defendants) Walter E. Justus and Zona L. Justus.

Richard L. Norris, John M. Choplin, II, Peter A. Schroeder, Norris, Choplin & Johnson, Indianapolis, for appellee (defendant) Justus Property Management, Inc.

BUCHANAN, Chief Judge.

## CASE SUMMARY

This is a consolidated action [1] in which plaintiff-appellants Mayssun Kahf, et al. (Tenants and Guests) appeal from summary judgment in favor of defendant-appellees Charleston Apartments South [2] (Charleston South), Walter E. Justus and Zona L. Justus (the Justuses), and Justus Property Management, Inc. (JPM). Tenants and Guests claim genuine issues of material fact exist as to landlord status, estoppel to deny landlord status, manager status, estoppel to deny manager status, and liability for prior acts of negligence.

We affirm in part, reverse in part, and remand.

1. Ind.Rules of Procedure, Appellate Rule 5(B).

2. Charleston Apartments South was mistakenly sued as "Charleston South Apartments."

3. The complaints also alleged similar claims against several other defendants (who are not

## FACTS

The undisputed facts are as follows: On August 13, 1975, Tenants entered into a lease of the apartment premises located at 2607 Larman Drive, Indianapolis. The lease named Charleston South as the lessor of the premises, and an accompanying document entitled "Regulations for Tenants" provided that JPM managed the apartment complex. On June 1, 1976, while the apartment was occupied by Tenants and their five Guests, a fire broke out and the residence was destroyed.

Seven complaints were filed, each complaint alleging the same basic facts and theories of recovery. Charleston South and its partners, the Justuses, were named as the owner/lessors, and JPM was named as the management company. All parties were alleged liable for over two million dollars in personal property damage and personal injury claims. The theories of the complaints sounded in negligence, res ipsa loquitur, and breach of implied warranty of habitability.[3] Although it was alleged generally that the fire was caused by defective electrical and heating systems, the published deposition of the plaintiffs' expert and the parties' contentions at oral argument theorized that the fire was caused by a latent electrical defect inside the apartment.

The fire, which, according to the complaints, caused serious physical injury (and, in one case, death) to several of the apartment's occupants, was only the beginning of an extended drama which carried over into years of litigation. Although Charleston South originally admitted that it was lessor of the premises, Tenants and Guests were surprised when, over two years later, Charleston South was permitted to amend its answer. In this amended answer, Charleston South denied that it owned the

parties to this appeal), including another management company, the alleged building contractor, an alleged subcontractor and installer of the electrical system, and the alleged manufacturer of the electrical wiring and system devices used in construction.

apartment building and denied that it executed a lease with Tenants.

Based upon the amended answer, Charleston South moved for summary judgment. The summary judgment motion contained the following pertinent exhibits which were also relied upon by the Justuses in their motion for the same relief:

1. A document of assignment, dated November 9, 1973, in which Charleston South assigned its leasehold interest in the subject property to an Indiana limited partnership, Charleston Associates. (The document stated that said leasehold interest had been assigned to Mr. Justus, by Leland Realty, in 1970 and that Mr. Justus had in turn assigned it to Charleston South later that year). *Record* at 130.

2. A warranty deed, also dated November 9, 1973, in which Charleston South conveyed "all improvements, but excluding the underlying land," to Charleston Associates. *Record* at 132.

3. Affidavits by the Justuses testifying to the above transfers and asserting that, after the transfers, Charleston South "had no part in, and no involvement in any way in, any ownership interest, possessor interest, leasehold interest, commercial activity, landlord interest, or any other involvement in any way in the activities carried out in renting" Tenants' apartment. According to the affidavits, Charleston South transferred the right to do business in its name to Charleston Associates. *Record* at 116.

Thus, according to Charleston South and the Justuses, the plaintiffs had sued the wrong parties—Charleston South had ceased having any interest in the premises almost two years prior to the inception of Tenants' lease.

In response, Tenants and Guests did not rest on their pleadings. Asserting that factual questions remained as to just who was the landlord and presenting an estoppel theory as well, they filed with the court the following exhibits:

1. An affidavit from the plaintiffs' attorney stating that he had been unable to find any public record of an assignment of the Charleston South business name to Charleston Associates.

2. An affidavit from Monzer Kahf [Tenant] testifying to his belief that Charleston South was his landlord.

3. Copies of the front side of four checks, signed by Kahf and made out to "Charleston South" or "Charleston South apts." during the rental period.

The plaintiffs also asserted reliance upon their lease which stated that Charleston South was the lessor.

Meanwhile, JPM sought summary judgment on similar grounds. Although apparently conceding that it had managed the apartment complex during the first part of Tenants' lease, JPM asserted that it had ceased management on April 21, 1976—over one month prior to the fire. In support of this assertion, JPM presented affidavits from its officer and the vice-president of Revel Companies attesting to a transfer of management responsibilities from JPM to Revel Companies on April 21, 1976. Tenants and Guests, armed with the lease which listed JPM as the management company, argued that JPM was estopped to deny responsibility.

The trial court entered summary judgment in favor of Charleston South, finding

"as uncontroverted material facts that the defendants Walter E. Justice [sic] and Zona L. Justice [sic] were and are the only partners of an Indiana General Partnership known as Charleston Apartments South, *that such Partnership had no involvement with the ownership or operation of the premises ... and, in fact, that such Partnership had divested itself of any involvement in the ownership or operation of such apartment and of such apartment complex ...*

*more than two and a half years before the incidents...."*

*Record* at 209–10 (emphasis supplied). A similar finding and judgment was entered in favor of the Justuses. Simply stating that no genuine issue of material fact existed, the trial court also entered summary judgment in favor of JPM.

The court certified the judgments for appeal pursuant to Ind.Rules of Procedure, Trial Rule 56(C), and Tenants and Guests appeal, raising numerous issues which we have restated as follows:

### ISSUES [4]

1. Does a factual controversy exist as to whether Charleston South was Tenants' landlord?

2. Could Charleston South be liable for prior acts of negligence, even if it was not the landlord at the time of Tenants' lease?

3. Does a factual controversy exist as to whether Charleston South should be estopped to deny landlord status?

4. Does a factual controversy exist as to whether JPM was the manager of the apartment complex at the time of the fire?

5. Could JPM be liable for prior acts of negligence, even if it was not the manager of the complex at the time of the fire?

6. Does a factual controversy exist as to whether JPM should be estopped to deny manager status?

■ Before proceeding further, it is necessary to accentuate the negative. Some issues we need not address. First, although Tenants and Guests alleged a theory of res ipsa loquitor in their complaints, there is no such content in their motions to correct error and appellate brief which are limited to theories of negligence and breach of implied warranty of habitability. This issue is waived as is their attempt to assign liability to Charleston South and JPM because of some connection between them and the alleged builders of the apartment complex, Justus Construction Company (alter ego theory). *See Fleetwood Corp. v. Mirich,* (1980) Ind.App., 404 N.E.2d 38; *Offutt v. Sheehan,* (1976) 168 Ind.App. 491, 344 N.E.2d 92.

■ Tenants and Guests have also waived any possible trial court error with regard to the allowed amendment of Charleston South's answer. When, on April 3, 1981, Charleston South petitioned for leave to amend, the petition clearly demonstrated that Charleston South sought to retract its admission of lessor responsibility and substitute a denial of any dealings with Tenants. *Record* at 101–02. Attached to the petition was a certificate attesting to service by mail upon the Tenants' and Guests' attorneys. The next entry shows the petition to amend was granted by the trial court on May 26, 1981—*over seven weeks* after the filing of the petition. *Record* at 104. We must conclude that Tenants and Guests have waived their right to challenge the court's action in allowing the amendment because they did not object to Charleston South's petition until the day *after* it was granted. *Record* at 107. This is not a case in which the complaining party had no time in which to object nor one in which a claim is made of no notice or insufficient notice. Tenants and Guests were duty-bound to register any objection to Charleston South's proposed amendment *before* the trial court took action; "[a] party who neglects to avail himself of a valid objection to a proceeding and stands by or participates therein until an adverse result is reached must bear the consequences." *Enderle v. Sharman,* (1981) Ind.App., 422 N.E.2d 686, 691. *See also Huff v. Travelers Indem. Co.,*

---

4. Each issue pertaining to Charleston South will also be relevant to the claims against the Justuses. The potential liability of the Justuses will not be discussed separately from that of Charleston South because the partnership is liable for loss or injury caused by "any wrongful act or omission of any partner acting in the ordinary course of the business ... or with the authority of ... copartners", Ind.Code 23–4–1–13 (1982), and individual partners "are liable [j]ointly and severally for everything [so] chargeable to the partnership." IC 23–4–1–15(a). *See also Miller v. Long,* (1956) 126 Ind. App. 482, 131 N.E.2d 348, *trans. denied.*

(1975) Ind.App., 328 N.E.2d 430 (objection to petition to amend must be made at trial court level), *vacated on other grounds,* (1977) 266 Ind. 414, 363 N.E.2d 985; *Oppenheimer v. Craft,* (1961) 132 Ind.App. 452, 175 N.E.2d 715, *trans. denied* (in the absence of sufficient objection before or after motion to amend was granted, court would presume amendment was authorized).

## DECISION

**ISSUE ONE**—Does a factual controversy exist as to whether Charleston South was Tenants' landlord?

**PARTIES' CONTENTIONS**—Tenants and Guests maintain that the affidavits supporting Charleston South's motion for summary judgment did not comply with T.R. 56(E) and that the trial court erroneously weighed the credibility of the affiants. Charleston South says that its affidavits were fully in compliance with the trial rules and that said affidavits conclusively established Charleston South had never been Tenants' landlord.

**CONCLUSION**—The trial court properly considered portions of Charleston South's submitted affidavits and other evidence which, in the absence of contradiction by Tenants and Guests, established as fact that Charleston South never leased the premises to Tenants.

Resolution of the issues in this case primarily involves us in untangling a jumble of factual considerations to determine if factual controversies exist thereby making summary judgment improper. We begin by briefly reviewing summary judgment principles. Summary judgment procedure should not be used as an abbreviated trial; rather, the purpose of summary judgment is to provide a procedural device for disposition of cases in which there is no genuine issue of material fact. *Carrell v. Ellingwood,* (1981) Ind.App., 423 N.E.2d 630. Under T.R. 56(C), summary judgment

is proper only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and testimony, disclose that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. *Carrell, supra; Boswell v. Lyon,* (1980) Ind.App., 401 N.E.2d 735, *trans. denied.* And even if the facts are not in dispute, summary judgment is still inappropriate if information before the court reveals conflicting inferences to be drawn from those facts. *Carrell, supra.* In reviewing grants of summary judgment, we use the same standards applicable to trial courts and must liberally construe all evidence in favor of the nonmovant and resolve any doubt as to the existence of a genuine issue against the proponent of the motion. *Jones v. City of Logansport,* (1982) Ind.App., 436 N.E.2d 1138.

The method of ascertaining whether a material factual issue exists is as follows: Facts alleged in the complaint are taken as true except to the extent that they are negated by other pleadings, depositions, answers to interrogatories, affidavits, or other evidence presented by the moving party. *Estate of Tanasigevich v. City of Hammond,* (1978) 178 Ind.App. 669, 383 N.E.2d 1081. All of which amounts to requiring the party moving for summary judgment to shoulder the burden of establishing the lack of a material factual issue. *Jones, supra.* Once the movant makes such a showing, the opposing party may not rest on his pleadings, but must then demonstrate the existence of a genuine issue for trial. *Johnson v. Padilla,* (1982) Ind.App., 433 N.E.2d 393, *trans. denied.*

Thus, we arrive at the proposition tendered by Tenants and Guests that the trial court erroneously considered the affidavits of Zona and Walter Justus.[5] Citing the T.R. 56(E) requirement that such affidavits "shall be made on personal knowledge, shall set forth such facts as would be

---

5. Contrary to the appellees' assertions, this issue has been preserved for review. We believe that Tenants' and Guests' memorandum filed prior

to the summary judgment hearing comports with the objection requirement set forth in *Enderle, supra.*

admissible in evidence, and shall show affirmatively that the affiant is competent to testify", they maintain that the affidavits should be disregarded completely because they fail to state affirmatively that the affiants are competent to testify.

Such a statement is unnecessary. We need only remind Tenants and Guests that the rule requires not a statement, but a *showing* of competency. In answering an analogous question, this court has held that an affidavit need not contain an explicit recital of personal knowledge when its contents demonstrate that the material parts thereof are statements within the affiant's personal knowledge. *In re Garden & Turf Supply Corp.*, (1982) Ind.App., 440 N.E.2d 710, *trans. denied; French v. Hickman Moving & Storage*, (1980) Ind.App., 400 N.E.2d 1384. The Justuses' affidavits show that the affiants have knowledge about the development and construction of the Charleston Apartments South complex, and we are hard-pressed to imagine who would be more competent to testify about the dealings of Charleston South than its sole partners, Walter and Zona Justus. The trial court could hardly err in considering the affidavits on this basis.

■ We do agree, however, that certain portions of the Justuses' affidavits should not have been considered. Statements in an affidavit as to what the affiant "verily believes" do "not satisfy [the] requirement that an affidavit state matters personally *known* because belief, no matter how sincere, is not equivalent to knowledge." *Celina Mut. Ins. Co. v. Forister*, (1982) Ind. App., 438 N.E.2d 1007, 1011. So, in evaluating these affidavits we disregard statements made on the basis of belief.[6]

Having so analyzed the evidence produced by Charleston South in support of its summary judgment motion, we conclude that there was more than an adequate presentation demonstrating no issue of material fact with respect to Charleston South's landlord status. The assignment document and warranty deed submitted by Charleston South showed that, more than two years prior to the inception of Tenants' lease, Charleston South assigned its interest in the subject property and conveyed all improvements to the property to a limited partnership named Charleston Associates. Properly considered portions of the Justuses' affidavits affirmed those transfers and added that Charleston South had also transferred the right to do business in its name to Charleston Associates.

Tenants and Guests, in response, did *not* challenge the validity of the instruments of conveyance and transfer submitted by Charleston South. Instead, they presented affidavits and exhibits which in no way contradicted these documents. A tenant's affidavit testifying to his *belief* that Charleston South was his landlord does not conflict with Charleston South's evidence of transfer; copies of the face of checks signed by a tenant and made out to Charleston South again only support a subjective belief that Charleston South cashed the checks and thereby accepted rent payments.

■ Similarly, Tenants and Guests did not present evidence contradicting the Justuses' testimony of a business-name transfer. The affidavit from the plaintiffs' attorney stating he had been unable to find any public record of an assignment of Charleston South's business name does not contradict a statement that such an assignment took place. The assumed business name statute, Ind.Code 23-15-1-1 (1982), requires the recording of a certificate stating the assumed name or names to be used in order to "protect the public from fraud and imposition by preventing a corporate

---

6. Such improper statements do not mandate a total disregard of all contents of the affidavits. The trial court was required only to ignore the improper portions thereof. *See Celina, supra; French, supra.* In addition, we decline to address the propriety of a statement made "to the best of" the Justuses' knowledge. The portion of the affidavits using such language was relevant only to the confusion surrounding the plaintiffs' misnaming of Charleston South. *See* note 2 *infra.* Because the misnomer is not an issue in this appeal, we need not consider that portion of the Justuses' affidavits.

entity from concealing its identity," *Parker v. Rod Johnson Farm Servs., Inc.,* (1979) 179 Ind.App. 190, 192, 384 N.E.2d 1129, 1131, but nowhere does the statute provide that such a recording is a necessary condition precedent to a valid business-name transfer. Differently stated, recording does not affect the validity of the assignment as between the transferee and the transferor. It is irrelevant. The more likely effect of noncompliance is to work an estoppel in favor of third parties under certain conditions. *See Sheraton Corp. v. Kingsford Packing Co.,* (1974) 162 Ind. App. 470, 319 N.E.2d 852. So we conclude that Charleston Associate's failure to comply with IC 23–15–1–1 does not contradict Charleston South's evidence of a transfer of its business name to Charleston Associates.

■ That leaves us with the complaints' allegations and Tenants' lease naming Charleston South as the lessor. Certainly, Tenants contracted with *some* entity that called itself "Charleston Apartments South." But it is our view that the defendant herein, Charleston South, has established that it was not the party with whom Tenants dealt. Although it is understandable that Tenants relied upon their lease and although, as will be discussed later, Charleston South may well be estopped to deny its landlord status, no material questions of fact existed with respect to whether Charleston South was the landlord at the time of Tenants' lease. This question has been resolved.

ISSUE TWO—Could Charleston South be liable for prior acts of negligence, even if it was not the landlord at the time of Tenants' lease?

PARTIES' CONTENTIONS—Tenants and Guests argue that concepts of privity have no application to their claim sounding in tort/negligence; they also cite to recent Indiana Supreme Court cases involving the builder-vendor implied warranty of habitability in support of an argument that privity should not be required. Charleston South asserts that, having never contracted with Tenants, it had no duty upon which suit can be based.

CONCLUSION—Under Indiana law as it now stands, landlord-tenant suits sounding in negligence and breach of implied warranty of habitability must be based upon privity of contract, so Charleston South cannot be liable for prior acts of negligence.

■ There is a transparent lure to Tenants' and Guests' assertion that prior acts of negligence could conceivably have proximately caused their injuries thereby creating a factual question inappropriate for summary judgment. However, such an argument ignores the well-settled proposition that an essential element of negligence claims is the breach of a *duty.* Unfortunately for Tenants and Guests, in *Great Atlantic & Pacific Tea Co. v. Wilson,* (1980) Ind.App., 408 N.E.2d 144, *trans. denied,* this court made clear that under Indiana law on premises liability, no duty is imposed upon one not in control of the premises. *Great Atlantic* may not be distinguished on the basis that the plaintiffs therein sought to impose liability upon a prior tenant. As our later analysis of the case demonstrates, the principle involved is broader than the *Great Atlantic* facts suggest:

> "The triggering factor is the transfer of possession and control. One who lacks possession and control of property normally should not be held liable for injuries which he is no longer in a position to prevent."

*Zimmerman v. Moore,* (1982) Ind.App., 441 N.E.2d 690, 694. Thus, the *Great Atlantic* and *Zimmerman* cases stand as a barrier to Tenants' and Guests' negligence claim against Charleston South because privity is required.

We are aware that in deciding a builder-vendor case, our supreme court has abolished the privity requirement. In *Barnes v. MacBrown & Co.,* (1976) 264 Ind. 227, 342 N.E.2d 619, the court recognized "an implied warranty of fitness for habitation [extending] to second or subsequent purchasers of [a] dwelling house when a latent

defect later appears." *Id.* at 228, 342 N.E.2d at 620. It is this development in the law to which Tenants and Guests hope to hitch their claim for breach of implied warranty of habitability.[7]

It is our view that, as an intermediate appellate court, we should not take the step advocated by Tenants and Guests. The Indiana Supreme Court, in *Barnes, supra,* saw fit to abolish the privity requirement in *builder-vendor* cases. It is the supreme court's province, not ours, to similarly abolish the privity requirement in a landlord-tenant setting. And although there can be little dispute that the factual scenarios produced by both types of cases are somewhat similar, we believe there are several factors warranting a conservative approach on our part.

The historical development of the implied warranty of habitability in landlord-tenant law demonstrates that the warranty is grounded in concepts of contract. Indeed, probably the single most important reason for the warranty's development was the recognition that a lease was not a conveyance (as had been earlier theorized), but a contract. *See Javins v. First Nat'l Realty Corp.,* (1970) 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185; Lessar, *the Landlord/Tenant Relation in Prospective: From Status to Contract and Back in 900 Years,* 9 KANSAS L.REV. 369 (1961). Therefore, it is only natural that a contractual notion like privity would be imposed upon warranty of habitability suits.

In addition, we observe that *Breezewood Management Co. v. Maltbie,* (1980) Ind. App., 411 N.E.2d 670, *trans. denied,* the

only Indiana case to recognize decisively an implied warranty of habitability flowing from landlords to tenants,[8] was essentially a contract case. In *Breezewood,* the tenants defended against the plaintiff-landlord's suit for rent due by asserting a counterclaim for breach of the implied warranty of habitability. The first district affirmed the trial court judgment on the tenants' counterclaim, concluding "that the seeds of the modern trend abolishing *caveat lessee* and treating a lease *as a contractual relationship* have been sown in Indiana." *Id.* at 675 (emphasis supplied). Other indications that breach of the warranty is a contractual claim may be found in the court's rationale for imposing a duty and in the award of damages: The landlord's breach was occasioned by his violation of numerous housing code provisions which were, by law, incorporated into the lease (contract), and the award of damages followed a basic contract-law calculation of the value as promised (agreed rental) minus the value as received.[9] Thus, it is clear that, as the law stands, Tenants and Guests are bound by contract principles including the concept of privity.

Finally, we observe a distinction between the builder-vendor cases and the landlord cases which is sufficient to warrant our caution in this area. The factual setting with which the supreme court was faced in *Barnes, supra,* imposed liability on a *builder*—that is, one who certainly had knowledge of latent premises defects in that he was the one who created the flaws. As this court stated when it declined to expand the implied warranty concept to the purchase of a used home from a non-builder, policy considerations supporting the im-

---

**7.** One might speculate that, once the privity requirement is abolished with respect to warranty of habitability claims, the privity concept outlined in the *Great Atlantic* and *Zimmerman* cases will be similarly undermined. That is to say, once the essentially contractual warranty of habitability duty is imposed, a negligence claim may be premised thereon. It is well established that the negligent breach of a contractual duty may give rise to a tort/negligence claim. *See, e.g., Flint & Walling Mfg. Co. v. Beckett,* (1906) 167 Ind. 491, 79 N.E. 503; *Staley v. Jamison,* (1874) 46 Ind. 159; *Essex v. Ryan,* (1983) Ind.

App., 446 N.E.2d 368; *Shriner v. Union Fed. Sav. & Loan Ass'n,* (1955) 126 Ind.App. 454, 125 N.E.2d 168, *trans. denied.*

**8.** *See Welborn v. Society for the Propogation of the Faith,* (1980) Ind.App., 411 N.E.2d 1267 (assuming, without deciding, that the warranty exists in Indiana). *See also Zimmerman, supra* (declining to extend the warranty to the casual rental of a single-family dwelling).

**9.** *See also Welborn, supra.*

position of a warranty are particularly strong when the one against whom liability is sought created the defect and is in a better economic position to bear the cost of repairs. *See Vetor v. Shockey,* (1980) Ind. App., 414 N.E.2d 575. Although a landlord may well be in a better economic position to bear the risk than is his tenant, he may not be in the position of having created the defect. This distinction, we think, supports our conclusion that *Barnes, supra,* does not lead inescapably to a departure from privity requirements in landlord-tenant relations in Indiana.

ISSUE THREE—Does a factual controversy exist as to whether Charleston South should be estopped to deny landlord status?

PARTIES' CONTENTIONS—Tenants and Guests contend that, because Charleston South knowingly permitted its name to be used in connection with the apartment complex, it should be estopped to deny landlord responsibility. Charleston South responds that estoppel should not lie because it engaged in no affirmative acts of misrepresentation and because it should not be penalized for Charleston Associates' failure to comply with the assumed business name statute.

CONCLUSION—A factual controversy exists as to whether Charleston South is estopped to deny landlord status.

 In general, when one party allows another party to masquerade as the first party, liability may arise to unknowing third parties who do business with the permittee. Although cases applying this rule normally deal with factual situations in which several interdependent businesses present a fictitious front of separate corporate existence, *see, e.g., Merriman v. Standard Grocery Co.,* (1968) 143 Ind.App. 654, 242 N.E.2d 128, *trans. denied; Clark Auto Co. v. Fyffe,* (1954) 124 Ind.App. 222, 116 N.E.2d 532, the facts of *Sheraton Corp. v. Kingsford Packing Co., supra,* demonstrate that such an estoppel theory may apply to a case like this one.[10]

 In *Sheraton,* the third district of this court was faced with facts supporting the imposition of equitable estoppel: A hotel was constructed and called the Sheraton Motor Inn. Sheraton Operating Corporation (Sheraton) was the exclusive operator of the hotel, but the establishment was actually owned by an investment company. Sheraton and the investment company *were separate entities.* For all appearances, however, Sheraton gave the impression that it was the hotel owner. For a period of about three years, the plaintiff packing company furnished foodstuffs to the hotel and dealt with "representatives" of Sheraton. Finally, when the hotel failed to pay several invoices which were billed to it, the packing company brought suit against Sheraton, and the trial court found Sheraton liable on the debts incurred by the hotel. Sheraton appealed, contending that it was not the owner of the hotel and that, under the terms of its operating agreement, the investment company, as owner, was liable. Sheraton lost. There was ample evidence from which the trial court could have determined that Sheraton was estopped to deny liability. Sheraton knowingly permitted its name to be used in the course of business by a separate entity (and also actively assisted that entity to appear identical to Sheraton), and the plaintiff packing company reasonably relied upon Sheraton's representations to its prejudice.

The elements of equitable estoppel were thereby described:

> "[I]t must be shown that there existed a false representation or concealment of material facts made with actual or constructive knowledge of the true state of facts; such representation must be made to one who is without knowledge or reasonable means of knowledge of the true facts with the intent that he rely upon it; and the second party must rely or act

**10.** There was no evidence presented to the trial court suggesting an issue as to whether Charleston South and Charleston Associates were so closely interrelated as to justify an "alter-ego" theory of estoppel.

upon such representation to his damage."

*Id.* at 476, 319 N.E.2d at 856. *See also Kokomo Veterans, Inc. v. Schick,* (1982) Ind.App., 439 N.E.2d 639, *trans. denied; Kline v. Kramer,* (1979) 179 Ind.App. 592, 386 N.E.2d 982. Applying this test, we conclude that questions of fact exist as to whether Charleston South should, like Sheraton, be estopped to deny potential liability.

### A. The Knowing Representation Element

It is undisputed that Charleston South knowingly allowed its name to be used by Charleston Associates in the leasing business. The Justuses transferred the right to do business in the Charleston South name, but the Charleston South partnership continued under the same name, too. Further, the representation certainly reached the Tenants by way of their lease which named Charleston South as landlord. It is of no moment if Charleston South did not affirmatively assist Charleston Associates in perpetuating the Tenants' false impression. It is well established that the representation of fact necessary to work an estoppel may be accomplished, not only by positive acts, but also by silence or acquiescence when good faith requires otherwise. *See, e.g., Erie-Haven, Inc. v. The First Church of Christ, Scientist,* (1973) 155 Ind.App. 283, 292 N.E.2d 837, *trans. denied; Bahar v. Tadros,* (1953) 123 Ind.App. 570, 112 N.E.2d 754, *trans. denied.* Thus, at least an inference arises that, by failing to inform tenants at the complex of its arrangement with Charleston Associates, Charleston South knowingly engaged in a "concealment of material facts". *See Sheraton, supra* at 476, 319 N.E.2d at 856.

### B. The Lack Of Knowledge Element

A factual controversy exists as to whether Tenants and Guests were without knowledge or reasonable means of knowledge that Charleston South was not their landlord. On the one hand, the parties apparently concede that Charleston Associates did not file an assumed business name; therefore, Tenants could not discover their true landlord by this means. However, on the other hand, Charleston South's instruments of conveyance to Charleston Associates were recorded and duly filed. Thus, the trial court could conceivably conclude that Tenants and Guests should have consulted such filings and should therefore be charged with constructive notice. Such a question is for the trier-of-fact.

### C. The Intent To Cause Reliance Element

This question is similarly for the trier-of-fact. Charleston South's intent may be inferred if its silence was of such a character as to induce a reasonable person to believe that it was meant to be acted on or if Charleston South should have known that it was both natural and probable that such silence would be relied upon. *Sheraton, supra* at 480–81, 319 N.E.2d at 858 (citing 31 C.J.S., *Estoppel* § 69 (1969). We will not address Charleston South's contention that it could not have been more above-board than it was with respect to its dealings with Charleston Associates. Such an argument must be made in the trial court.

### D. The Reliance Resulting In Prejudice Element

Certainly there is a factual inference that Tenants and Guests relied upon the representation that Charleston South was Tenants' landlord—they brought suit against Charleston South, seeking compensation for their injuries. And the possibility of prejudice is easy to discern: The statute of limitations has run, and Tenants and Guests are left in a suit in which they have sued the wrong party. This prejudice is not conclusively established, however, because we observe that Tenants and Guests have not attempted to amend their complaint to either add or substitute Charleston Associates as a defendant. Facts could conceivably exist under which an amended complaint would relate back, *see* T.R. 15(C); *Parsley v. Waverly,* (1981) Ind.App., 427 N.E.2d 1, but it is not our province to

express an opinion upon that question. Like the other elements of estoppel, the prejudice element must be resolved in the trial court.

Having concluded that questions of fact exist as to Tenants' and Guests' estoppel theory, we must reverse the trial court's judgment on this basis. Sufficient factual questions and conflicting inferences exist which warrant a trial on this issue.

ISSUE FOUR—Does a factual controversy exist as to whether JPM was the manager of the apartment complex at the time of the fire?

PARTIES' CONTENTIONS—Tenants and Guests maintain that affidavits by JPM (Justus Property Management, Inc.) in support of its motion for summary judgment did not comply with T.R. 56(E) and that the evidence before the trial court demonstrated a factual controversy as to when JPM ceased its connection with the apartment complex. JPM responds that, even if portions of the affidavits are ignored, no factual controversy exists.

CONCLUSION—Properly considered portions of JPM's submitted affidavits demonstrate that JPM was not involved in the management of the apartment complex at the time of the fire.

Again we are faced with a challenge to the propriety of considering affidavits submitted to the trial court. As discussed earlier, *see* Issue One, it is of no moment that the affidavits of Gatch and Shotts did not affirmatively state that the affiants were competent to testify. Having examined the affidavits, we are convinced Shotts, an officer of JPM, and Gatch, the vice-president of Revel Companies, are competent to testify about the business dealings of those companies.

We agree, however, that portions of the affidavits should not have been considered by the trial court. Statements in affidavits setting forth conclusory facts or conclusions of law cannot be used to support or oppose a motion for summary judgment. *Celina, supra; Hirschauer v. C & E Shoe Jobbers, Inc.,* (1982) Ind.App., 436 N.E.2d 107; *Coghill v. Badger,* (1982) Ind.App., 430 N.E.2d 405, *trans. denied.* For example, in *Hirschauer, supra,* a portion of an affidavit was improper because it offered a conclusion of law that the defendant had "control" of the premises. Similarly, certain statements in the Shotts and Gatch affidavits must be excluded:

"That on April 21, 1976, Charleston Associates, its agents and employees, relinquished all *right, duty and power* to manage, maintain or operate the Charleston Apartments South.

. . . .

That, after April 20, 1976, Justus Property Management, Inc., had no *right, duty or obligation* with respect to the property at Charleston Apartments South or with respect to the management thereof.

. . . .

[T]hat Justus Property Management, Inc., in fact, had no *right, duty or power* to manage, maintain or operate the above-mentioned apartments."

*Affidavit of Shotts, record* at 157 (emphasis supplied).

"That to affiant's knowledge after April 20, 1976, Justus Property Management, Inc., had no *right, duty or obligation* with respect to the property at Charleston Apartments South or with respect to the management thereof."

*Affidavit of Gatch, record* at 160 (emphasis supplied). Such improper conclusions should not have been considered by the trial court, and we will exclude them from our review.

▮ It is our opinion, however, that the following three statements from Gatch and Shotts support the entry of summary judgment on this issue: [11]

"That on April 21, 1976, Revel Companies, Inc., took over management of

---

11. We decline to express an opinion upon the propriety of statements made "to the best of" Gatch's knowledge or "to the knowledge" of Gatch. Assuming, as Tenants and Guests argue, these statements do not meet the personal knowledge requirement of T.R. 56(E), the statements set out in text are sufficient to support the trial court's entry of summary judgment.

Charleston Apartments South replacing Justus Property Management, Inc."

*Affidavit of Gatch, record* at 160.

"That on April 21, 1976, Revel Companies, Inc., assumed management of the premises known as Charleston Apartments South....

. . . .

That at the time of the alleged fire on June 1, 1976, Revel Companies, Inc., was the manager of the Charleston Apartments South...."

*Affidavit of Shotts, record* at 157. These statements were not disputed by Tenants and Guests. And although Tenants and Guests point to Revel Companies' answers to interrogatories in order to demonstrate a factual conflict, those answers were not before the trial court when it entertained JPM's summary judgment motion: Summary judgment was entered in favor of JPM on December 7, 1981, and the arguably conflicting answers to interrogatories were not filed until January 20, 1982. Error cannot be based upon evidence not before the trial court when it ruled on the summary judgment motion. *Weenig v. Wood,* (1976) 169 Ind.App. 413, 349 N.E.2d 235, *trans. denied.* Furthermore, Tenants' and Guests' attempt to place that evidence before the court by attaching the document to their motion to correct error did not comply with the rules regarding newly discovered evidence, *see Hurst v. Board of Commissioners,* (1983) Ind.App., 446 N.E.2d 347, 351 n. 1, so we will not consider the answers in our review.

In the absence of contradiction, it can only be concluded that the statements made by affidavit are true; JPM was not the management company at the time of the June 1 fire. Thus, summary judgment was proper on this issue.

ISSUE FIVE—Could JPM be liable for prior acts of negligence even if it was not the manager of the complex at the time of the fire?

CONCLUSION—We need not address the parties' contentions on this issue because we have already determined that Tenants' and Guests' claims resting in negligence and breach of implied warranty of habitability must be based on privity. *See* Issue Two. Therefore, because JPM was not in management at the time of the fire, suit against JPM is barred because no privity existed at the time of Tenants' and Guests' injuries.

ISSUE SIX—Do facts material to the claim that JPM is estopped to deny manager status remain in controversy?

PARTIES' CONTENTIONS—Tenants and Guests pose an estoppel argument similar to the one made against Charleston South; that is, they argue that because JPM knowingly permitted someone else to use its name in connection with managerial duties JPM should be estopped to deny responsibility. JPM counters with the argument that prejudice, an essential element of estoppel, has not been shown.

CONCLUSION—Because Tenants and Guests have named Revel Companies as a party defendant to this suit, they have failed to establish even a controversy as to the question of prejudice; therefore, JPM is not estopped to deny manager status.

Prejudice is a necessary ingredient for an estoppel claim. *Sheraton, supra; Individual Members of the Mishawaka Fire Dep't v. City of Mishawaka,* (1976) 171 Ind.App. 95, 355 N.E.2d 447. Therefore, assuming JPM concealed material facts with the intent that Tenants and Guests rely upon that concealment, estoppel will not lie if Tenants and Guests cannot point to some prejudice resulting from their reliance. We fail to see how Tenants and Guests have sustained any such damage. The *only* prejudice asserted by Tenants and Guests is that the statute of limitations has run on their claim. This may be so, but Revel Companies, the *only* suggested defendant to be substituted for JPM, is already a party to this suit. Where is the harm? Tenants and Guests may continue with their claims of negligence and breach of implied warranty of habitability against Revel Companies, and the statute of limitations is not an issue. Sum-

mary judgment was appropriate on this question.

In summary, we conclude that no questions of fact material to Charleston South's landlord status, JPM's management status, or the potential estoppel of JPM remain. In addition, as a matter of law, Tenants' and Guests' suit may not be based on prior acts of negligence, absent privity, until there is further guidance from our supreme court. Questions of fact do exist as to whether Charleston South should be estopped to deny its landlord status; therefore, Tenants and Guests are entitled to go to trial on this question.

One-sixth of the costs herein shall be borne by the Justuses and Charleston South, and five-sixths of said costs will be assessed to Tenants and Guests.

Judgment affirmed in part and reversed in part; cause remanded.

MILLER, J. (sitting by designation), concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I concur but would add a slight caveat as to Issue Two. None of the appellees were shown to have been the builder of the premises. Accordingly, under these circumstances, I would not impose strict liability or other liability by way of a breach of implied warranty of habitability. We venture no opinion today as to liability from a builder-lessor to a tenant who is not the first tenant to have leased the premises. It seems to me that if case law in Indiana holds a builder-vendor liable to a subsequent vendee, (*Barnes v. MacBrown and Co., Inc.* (1976) 264 Ind. 227, 342 N.E.2d 619) similar liability flows from a builder-landlord to a subsequent tenant.

I also venture no view with respect to possible liability from a lessor who is not the builder to a tenant for a defect which existed prior to his assumption of the landlord relationship if the landlord had knowledge of the defect or had the duty and opportunity to discover its existence. *See*

*Vetor v. Shockey* (2nd Dist.1980) Ind.App., 414 N.E.2d 575.

To the extent, therefore, that the builder of the premises may still be a party to this litigation, I do not join any implication that plaintiffs are precluded from asserting their claims for breach of implied warranty of habitability.